## WHITEBIRD et al. v. LUCKEY.

No. 25327. April 6, 1937.

Wm. M. Thomas, guardian ad litem, for plaintiffs in error.

Commons & Chandler and Jarman & Brown, for defendant in error.

BUSBY, J. This case is presented to us on appeal from a judgment of the district court of Ottawa county in which $10,000 permanent alimony was awarded in connection with the annulment of a voidable marriage. The principal question presented concerns the authority of the court to allow permanent alimony in this kind of case.

At the conclusion of the evidence in the district court that court, upon reque..t, made and filed in writing its findings of fact and conclusions of law in accordance with which judgment was entered. The sufficiency of the evidence to support the findings of fact is not challenged in this court. They will, therefore, be accepted as true for the purposes of this appeal. From such findings the following facts appear:

Robert A. Whitebird is a full-blood Quapaw Indian. On July 3, 1932, he was married to Mary Luckey by a justice of the peace at Joplin, Mo. Both of the parties were at the time of the marriage residents and citizens of Ottawa county, Okla.

Robert A. Whitebird had been previously married to one Flora B. Whitebird from whom he had been divorced on May 19, 1932, by an Oklahoma court. His marriage to Mary Luckey, being within six months from the date of the decree of divorce, was prohibited by law. Section 674, O. S. 1931. Such a marriage has been held voidable by this court. Plummer v. Davis, 169 Okla. 374, 36 P. (2d) 938.

Mary Luckey had known Robert A. Whitebird for more than a year prior to the voidable marriage ceremony. She knew of his prior marriage and had been informed of his divorce. She did not, however, know the date of the divorce and believed that it had occurred more than six months prior to the marriage.

A few days after the marriage, however, the parties met with an attorney at the attorney's office and were there informed of the unlawful nature of the marriage and advised that a decree of nullification should be procured. However they disregarded this advice and continued to live together for several months thereafter as man and wife. They spent their time during this period in Oklahoma, Arkansas, and Missouri, driving around for entertainment. Their joint efforts did not result in the acquisition of any

property and no child was born of the marriage.

Robert A. Whitebird is worth probably in excess of $100,000. His property consists of real estate and cash. His property, however, is restricted from use or sale and is held under the supervision and control of the Secretary of the Interior.

This action was commenced on the 16th day of December, 1932, by Flora G. Whitebird, his mother, and next friend of Robert A. Whitebird, as plaintiff, against Mary Luckey, as defendant. The purpose of the action was to annul the marriage.

The defendant, in addition to the other things, denied the alleged illegality of the marriage contract, asserting the validity thereof.

The learned trial court concluded that the marriage was voidable and entered its judgment annulling the same. The propriety of entering a decree of annulment is not questioned in this proceeding. No cross-appeal has been taken. As a part of said judgment, the defendant, Mary Luckey, was awarded the sum of $10,000 as permanent alimony. From the judgment allowing permanent alimony Robert A. Whitebird has appealed, through his next friend and Wm. M. Thomas, his guardian ad litem.

The parties appear in this court in the order of their appearance in the court below, and we shall continue to refer to them by their trial court designation.

The first proposition of plaintiff is that "in an action to annul a marriage where a decree of nullity is entered the court cannot grant the former wife permanent alimony."

Our attention is not called to any case in this jurisdiction which passes upon the precise question, but the contention of the plaintiff seems to be supported by the overwhelming weight of authority from other jurisdictions. It is the general and almost universal rule as stated by the text writers upon the subject. See 1 R. C. L. 939, par. 86, subject "Alimony"; 38 C. J. p. 1359 and cases cited in note 73; see annotations 5 L. R. A. (N. S.) 767, 102 A. S. R. 710, 4 A. L. R. 926, 9 A. L. R. 1222. Nor does the fact that the wife may have been acting innocently in the transaction alter the rule. Werner v. Werner, 59 Kan. 399, 53 P. 127, 68 A. S. R. 372, 41 L. R. A. 349; annotation in 5 L. R. A. (N. S.) at page 768.

There are, of course, jurisdictions in which the rule is otherwise by reason of particular statutory provision authorizing courts to grant permanent alimony in connection with decrees of annulment. Those decisions are not applicable here, for the reason that in this state we admittedly have no such legislative authority. There are a few notable exceptions to the general rule as above stated, as, for instance, Kentucky, which adopts a contrary view in the absence of statute. See Strode v. Strode, 3 Bush. (Ky.) 227, 96 A. D. 211, and annotations. And it has been suggested in Massachusetts that a court of equity jurisdiction might, as a condition to granting the relief of annulling a marriage, require the payment of a sum of money which would be much the same as alimony. See Adams v. Holt, 214 Mass. 77, 100 N. E. 1088, Ann. Cas. 1914B, 850, and note. See, also, Cooper v. Cooper, 147 Mass. 370, 17 N. E. 892, 9 A. S. R. 721.

The soundness of the suggested rule is not before us in this case, for the reason that the award herein entered was for permanent alimony, as distinguished from a required payment as a condition to granting equitable relief.

The reason for the rule lies in the nature of alimony and the basis for its allowance. It is based upon the marriage contract. The marriage relation created by contract imposes the duty to support. Where the marriage relation is dissolved, as in an action for divorce, by reason of the fault of an offending spouse, the contractual obligation to support is continued in existence by the decree of the court awarding alimony. The decree of divorce recognizes the binding force of the marriage contract from which the obligation to pay alimony primarily arises. It is otherwise if, as in this case, the decree be one of annulment. The very basis of such a decree is that the marriage contract had no binding force and effect. A court cannot say without an unpardonable degree of inconsistency, "This marriage contract, being void or voidable, is hereby set aside," and, in the next breath, "The contract is valid and enforceable and by reason of its validity and enforceability, it will be enforced to the extent of requiring the payment of alimony." See 1 R. C. L. 86. If the law should be otherwise, the duty to change rests with the legislative branch of government, not the judicial.

In her brief the defendant suggests that this rule is supported by the older cases and is not in accord with modern ideas. She failed, however, to call our attention to any authorities, either modern or ancient, to the contrary, except by asserting in substance, that the case of Hunt v. Hunt, 23 Okla. 490.

100 P. 541, supra, announces an opposing doctrine. We shall, therefore, turn our attention to that case.

As a basis for our discussion, it is proper to recognize at this point that the rule is somewhat different in cases relating to temporary alimony, suit money, and attorneys' fees prior to the final determination of a cause of this class. Thus it is generally held with reference to temporary alimony, suit money, and attorneys' fees that the same are properly allowable where the husband is seeking to annul the marriage and the wife is asserting the validity thereof. This because the invalidity of the marriage is not yet established.

Different principles also prevail in connection with property jointly acquired during cohabitation subsequent to a void or voidable marriage. In such cases the courts generally require an equitable division of the property thus acquired upon the theory that the acquisition thereof is a result of the joint efforts of the parties. Krauter v. Krauter, 79 Okla. 30, 190 P. 1088. Bearing in mind these principles, let us now inspect the case of Hunt v. Hunt, supra, in which this court, speaking through Mr. Justice Dunn, recognized the right of a trial court, in an action where the husband was seeking to nullify the marriage and the wife was denying the invalidity thereof, to make an allowance to cover expenses incurred in connection with and growing out of the voidable marriage relation and to make temporary provision for the support of a child born of such marriage and to require the payment of an attorney's fee. It is to be noticed in connection with this case that it follows the general rule with reference to the allowance of temporary alimony pending the final determination of the litigation and that it does not concern permanent alimony in any way. The case contains the suggestion, however (page 498, 23 Okla.), that it might be entirely proper and legal to compel the man to support the child born of such marriage. It contains no suggestion whatever that it would be proper to allow permanent alimony. That question was not before the court in that case. It is to be noted that the court in the Hunt Case indorsed and approved the reasoning of the Nebraska court in the case of Willits v. Willits, 76 Neb. 228, 107 N. W. 379, 14 Ann. Cas. 883, 5 L. R. A. (N. S.) 768. While the Hunt Case did not involve permanent alimony, the Willits Case thus referred to with approval did, and the Nebraska court therein held definitely that permanent alimony could not be allowed in an annulment proceeding, stating the reason for so holding in the following appropriate language:

"To support his wife is one of the obligations assumed by the husband by virtue of his marriage contract, and where, as in this case, the marriage is voidable, a release from such obligation is a part of the relief sought by the husband in a suit to annul the marriage. Permanent alimony is a statutory innovation, and we find no statutory authority for its allowance in a suit brought to annul a voidable marriage."

It will thus be seen that the very case upon which the Hunt Case is based is contrary to the contention of the defendant herein.

It is also important to observe in this connection that the marriage involved in that case, as in this case, is voidable as distinguished from a void marriage.

In addition to the foregoing authorities, we have in prior decisions of this court a definite expression that permanent alimony is not allowable in an annulment suit. Such expression is incorporated in the syllabus of the case of Krauter v. Krauter, 79 Okla. 30, supra, in which it was said that in an annulment proceeding, "the court, while it cannot grant alimony as such, has authority to make an equitable division of the property jointly accumulated by the parties while they lived together as husband and wife." In this case there is no jointly accumulated property, and the attempted award is permanent alimony as such. The expression in the Krauter Case may well be said to be dictum, but it is apparently in accord with the overwhelming weight of authority.

In view of the foregoing authorities, we must and do hold that the award for permanent alimony in this case was erroneous, and the same must be vacated.

As a part of its findings the trial court, in addition to the things previously mentioned in this opinion, found that the defendant, Mary Luckey, had agreed to pay her own attorney's fees in the event her judgment for alimony should be sustained. In this connection the trial court, upon evidence introduced by the parties, found that a reasonable fee for the services of defendant's counsel in trying this case in the trial court was $2,000, and that the same should be paid by the plaintiff in the event the defendant did not prevail on the alimony feature of the judgment. Since such fee was de-

termined as a reasonable one by the trial court for services rendered prior to the time the decree of annulment was entered and while the defendant was asserting the validity of the marriage, it was properly allowable as a charge against the plaintiff under the rule announced in Hunt v. Hunt, supra. This $2,000 is entitled to be credited according to the record with the sum of $250 previously paid by the plaintiff, and, if any further payments have been made by the plaintiff upon the said sum, the same should be credited.

This cause is reversed, with directions to vacate that portion of the judgment allowing permanent alimony and with directions to amend and modify the judgment by allowing the attorney's fee found to be reasonable and just, less proper credits.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, GIBSON, and HURST, JJ., concur. WELCH and CORN, JJ., dissent.