WHITNEY et al. v. WHITNEY.

No. 30618. June 30, 1942.

Rehearing Denied Feb. 23, 1943.

Application for Leave to File Second Petition for Rehearing Denied March 9, 1943.

*134 P. 2d 357.*

Geo. C. Crump and H. W. Carver, both of Wewoka, for plaintiffs in error.

O. A. Cargill and Clay M. Roper, both of Oklahoma City, for defendant in error.

BAYLESS, J. Mary P. Whitney sued Wayne Whitney in the district court for a divorce, and other appropriate relief with respect to their minor children and property. She alleged that:

"On October 1, A.D., 1928, plaintiff and defendant were married in Oklahoma City and ever since that date have been husband and wife."

The ground for divorce was extreme cruelty. Whitney filed an answer wherein (1) he denied the marriage in Oklahoma City; (2) he set out in detail his marriage to another woman in 1913, and asserted that that marriage had never been dissolved; (3) and by reason of the marriage existing between him and another woman he was incapable, in 1928, of contracting a marriage with plaintiff.

During the trial, the fact that Whitney had a living wife in 1928 and was still bound in matrimony to her at the time of the trial became so obvious that plaintiff asked and was given permission to amend her petition to allege as ground for divorce 12 O. S. 1941 § 1271 (1), that is: Whitney had a former wife living at the time of the subsequent marriage.

At the close of the hearing plaintiff was granted a divorce from Whitney on the ground he had a living wife at the time he married plaintiff in 1928. The matter of settlement of property rights and the custody of the children was deferred, and settled at a later hearing.

The appeal involves all of the issues disposed of by the trial court. However, it is proper to say at this point that no contest is presented to us concerning the children. Their custody was given to their mother, Whitney contracted to pay a sum monthly for the support of each of them, the trial court ordered him to pay a monthly sum for their support, and we are not asked to review or interfere with this aspect of the case. The trial judge was solicitous for the legitimacy of these children, and properly so. It is to be observed that Whitney has never denied their paternity, and in all of the records and proceedings before us has recognized them as his children.

Whitney contends first that the alleged marriage with plaintiff is bigamous and void. This is correct. The Constitution of Oklahoma, art. 1, § 2, says: "Polygamous or plural marriages are forever prohibited." At the time plaintiff and Whitney undertook to establish a marital status, he was a married man, having then a wife from whom he was not divorced and to whom he was bound in legal marriage, and therefore he was incapable of entering into a contract of marriage with plaintiff.

Considerable discussion is indulged by the parties as to whether, since it is admitted there was no ceremonial marriage, there was a common-law marriage, and cases are cited from this and other jurisdictions setting out the elements essential to a common-law marriage.

We think this is beside the point. Common-law marriages are valid in Oklahoma. Mantz v. Gill, 147 Okla. 199, 296 P. 441; Fisher v. Fisher, 116 Okla. 129, 243 P. 730, and other Oklahoma cases. Where the prescribed essentials are shown, a common-law marriage is as valid as one based on a license and ceremony.

But, if one of the parties to a so-called common-law marriage has a living spouse of an undissolved marriage, the common-law marriage attempted is as polygamous and plural and, therefore, as void as a ceremonial marriage attempted under the same circumstances.

Plaintiff argues that because the first ground for divorce in our statutes, 12 O. S. 1941 § 1271 (1), the one relied on by her, is the existence of a valid prior marriage as to one or both of the parties, the Legislature has thereby invested the attempted subsequent marriage with some validity and sanctity, the effect of which is to give our courts power to adjust the so-called marital rights and other incidents thereto.

Plaintiff has furnished us with a memorandum calling attention to the statutes of several states (Arkansas, Colorado, Florida, Illinois, Mississippi, Ohio, and Kansas) providing for divorce on the ground of an existing marital relation at the time of the subsequent marriage, and decisions from several states discussing the legislative power, and the tendency of the courts to further such a policy, to deal less harshly with plural marriages than was customary at common law. Leckney v. Leckney, 26 R. I. 441, 59 Atl. 311; Lea v. Lea, 104 N. C. 603, 10 S. E. 488; Selby v. Selby, 27 R. I. 170, 61 Atl. 142, and Reese v. Reese, 128 Kan. 762, 280 P. 751.

The statute just cited was first put into effect in Oklahoma prior to statehood, Stat. 1893 § 4543, and was adopted from Kansas. After statehood the statute was carried forward and now reads as it did prior to statehood. But what-

ever were its connotations prior to statehood, and granting it may have been construed to lend support to plaintiff's argument, it ceased to have any meaning contrary to the fundamental policy of our state as expressed in article 1, § 2, Constitution of Oklahoma. With the adoption of our Constitution any validity or any sanctity theretofore accorded the subsequent marriage in cases of bigamous or plural marriages ceased, and such bigamous or plural marriages when attempted are void and wholly ineffectual to create a marital status or any of the legal incidents that usually flow therefrom as between the parties. See Oklahoma Land Co. v. Thomas, 34 Okla. 681, 127 P. 8, for a discussion of this problem prior to statehood.

A search has not shown that any of the states, whose statutes are cited in the memorandum, have a constitutional prohibition against plural marriages as we have. The Legislatures of those states are free to establish the public policy thereon, and may accord any status or privileges to the parties to a plural marriage that seems desirable. We think this makes the problem in those states sufficiently different from the problem in this state as to deprive the statutes and decisions cited of any analogous value to the issue in Oklahoma.

We are impressed by what is said in 18 R. C. L. 441, § 69:

"A marriage void in its inception does not require the sentence, decree or judgment of any court to restore the parties to their original rights or to make the marriage void, but though no sentence of avoidance be absolutely necessary, yet as well for the sake of the good order of society as for the peace of mind of all persons concerned, it is expedient that the nullity of the marriage should be ascertained and declared by the decree of a court of competent jurisdiction."

The Legislature has power and ought to provide for a judicial determination of the void nature of the subsequent marriage.

We do not think it beyond the power of the Legislature to adopt the mechanics of the divorce action as a method for the courts to determine the issue of fact and law, that a marriage is plural and void, and it probably does not matter that the decree or judgment is called divorce rather than annulment. In some of our cases the proceeding is apparently referred to as annulment. Whitebird v. Lucky, 180 Okla. 1, 67 P. 2d 775. But the power in the Legislature to provide for such a judicial determination and the use of the term "divorce" as applied thereto cannot have the effect of adopting the philosophy underlying divorce as applied to the dissolution of a valid marriage so as to carry with it the power to adjust rights as though a valid marriage were being dissolved. Many incidents attach to divorce in the dissolution of a valid marriage, such as allowances pendente lite, separate maintenance, permanent alimony, custody and support of children and division of property on the basis of matters implied from the joining in lawful wedlock, and are countenanced by equity or provided by statute.

Where there is no marriage there can be no allowance pendente lite. Baker v. Carter, 180 Okla. 71, 68 P. 2d 85.

When the marriage is void there can be no alimony, no dower, courtesy or interest in property equivalent thereto. Krauter v. Krauter, 79 Okla. 30, 190 P. 1088, and Whitebird v. Lucky, 180 Okla. 1, 67 P. 2d 775.

Insofar, then, as our divorce statute is concerned, when the court has determined that one or both of the parties to a marriage were incapable of contracting the marriage because of being then bound in a valid marriage, it has exhausted the legislative power conferred on it, and it cannot assume to exercise the other powers inherent or statutory in divorce relating to valid marriages. Whitebird v. Lucky, supra.

The trial court was correct in determining that the relation of the parties to each other should be stated by a judgment determining that Whitney was a married man in 1928, and at all times

up to the rendition of the judgment, and therefore incapable of marrying plaintiff, and in granting to her an order or judgment that neither was bound to the other.

The trial court undertook to adjust the property rights of the parties as though there were some sort of a marriage that vested the court with the powers stated by statute in rendering a divorce following a legal marriage.

We are of the opinion that when it conclusively appears, as herein, or is adjudged on competent evidence that the relation of husband and wife never existed legally, the statutory power to adjust property rights, 12 O. S. 1941 § 1278, has no application, but that the power to adjust such rights is equitable. See Krauter v. Krauter, supra, and Tingley v. Tingley, 179 Okla. 201, 64 P. 2d 865.

The matter of the adjustment of property rights between man and woman involved in a bigamous marriage has frequently engaged the attention of the courts, as can be seen by reference to the cases cited in Am. Dig. (West) Partnership, Key No. 26; 47 C. J. 653, § 44, and notes; 35 Am. Jur. 217, § 54; 75 A. L. R. 733; and the annotations in 36 L. R. A. (N. S.) 838, following the report of the decision in Mitchell v. Fish, 97 Ark. 444, 134 S. W. 940. For purposes of classification the relation of the parties is likened to that of partnership, and while in earlier cases there was diversity of view as to whether the man and woman should be treated as partners with respect to their property rights, the later cases seem to approach closer agreement on this issue and to recognize that it is probably an easier settlement of a difficult problem to regard the parties to a bigamous marriage as partners with respect to their property rights arising during the cohabitation. We have said it is a quasi-partnership. Krauter v. Krauter, supra.

This brings us, then, to the contention made by Whitney, that after this litigation arose the parties entered into a written contract adjusting and settling their property rights and that such contract is binding on the courts.

Following the rule applicable to partnership generally, we think this is correct. It is elemental that partners may dissolve their relationship by contract, and may adjust, settle, and dispose of their property rights thereby (47 C. J. 1111, § 764); and, in the absence of an attack thereon by either of the parties on any of the recognized grounds for rescission, the contract will be enforced by the courts. No such attack is made upon the contract that calls for a rescission.

The plaintiff took the position that the contract entered into was for the purpose of adjusting the differences between the parties and to permit the reconciliation between them, and we gather from what is said in her brief that they lived together after the contract had been executed. In support of this position the plaintiff cites Hale v. Hale, 40 Okla. 101, 135 P. 1143, and other Oklahoma cases, to the effect that a contract made between a husband and wife in a divorce proceeding in settlement of differences between them is nullified by the reconciliation and resumption of the marital relation. We suppose that the trial court adopted this view and seems to have assumed that because the litigation was not terminated the contract was destroyed by the reconciliation, or the plaintiff was free to repudiate because not wholly executed, and that thereby the contract ceased to be effective for any purpose. We think this view of the matter is erroneous. Plaintiff and Whitney were not husband and wife. The rule announced in Hale v. Hale, supra, applies to parties who are legally husband and wife. These parties were not legally married and at the time the contract was entered into each of them knew that there was a serious question of its validity and they were not eligible to reconcile themselves and resume the marital relation with the effect of thereby rendering ineffective a contract entered into. They were with respect to their property partners and were free

to deal with each other as such. Until such time as an attack is made on the contract on any of the recognized grounds, the contract must stand. Therefore, with the record before us as it is, the trial court erred in treating the contract as not binding and not assuming to adjust the property rights of the parties.

Whitney complains of the allowance of an $8,000 attorney's fee to plaintiff to be charged to Whitney as a part of the cost of the action. Since there was no marital relation between the two, it was not proper for the trial court to allow the plaintiff an attorney's fee to be taxed to Whitney as a part of the cost of the action. In the contract referred to above, Whitney obligated himself to pay an attorney's fee to one of the attorneys for plaintiff in connection with matters covered in that contract not material to the issues before us, and said contract further provided "that said party of the second part shall not be held responsible for any other fee in connection with said matter." In addition to this, it is provided earlier in said contract as follows:

"Party of the First Part hereby agrees that for and in consideration of the covenants and agreements herein contained that all claims and demands heretofore made by Party of the First Part against Party of the Second Part, whether orally, by written notice or by litigation, are hereby fully satisfied, and Party of the Second Part is hereby released from the same."

We take these two provisions to be sufficient to cover the matter of attorney's fees to be incurred by plaintiff in connection with this litigation or the guardianship of the children of the parties, and to fall within the category of matters with respect to which the parties were free to contract as stated above. Therefore, the allowance of an attorney's fee to the plaintiff to be charged against Whitney was erroneous.

The judgment of the trial court is affirmed insofar as it found and adjudicated that Whitney was a married man and that the relations which the parties have assumed toward each other were bigamous, and in making a judicial determination of this fact and the legal effect thereof; and said judgment is reversed insofar as it undertook to set aside the contract and to adjust the property rights of the parties and insofar as it undertook to charge Whitney the attorney's fee allowed to the plaintiff; and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

WELCH, C.J., and RILEY, OSBORN, HURST, and DAVISON, JJ., concur. CORN, V.C.J., and GIBSON and ARNOLD, JJ., dissent.

———

GIBSON, J. (concurring in part and dissenting in part). As I construe the contract mentioned in paragraph 5 of the syllabus, the plaintiff in error, Wayne Whitney, agreed to pay to O. A. Cargill, attorney, the sum of $500 and no more for consultation and representation of Mary P. Whitney as guardian in the proceedings in county court in the appointment of her "as guardian and in the making and preparing of such orders as are necessary to carry out the terms and conditions of the guardianship by the provisions of this contract to January 1, A. D. 1941. . . ."

I find no provision in the contract for the payment or nonpayment of attorney's fees to defendant in error's counsel in a divorce action or in an action to have the nullity of the void marriage between Wayne Whitney and Mary P. Whitney ascertained and declared by a court of competent jurisdiction.

I agree that the marriage in question was void ab initio.

I also agree that such a marriage "does not require the decree or judgment of a court to make the marriage void and to restore the parties to their original rights."

And I am of the opinion that it not only is expedient for the good of so-

ciety that the nullity of such a marriage be ascertained and declared by a court of competent jurisdiction, but that the Legislature by providing (12 O. S. 1941 § 1271 (1)) that a district court may grant a divorce "when either of the parties had a former husband or wife living at the time of the subsequent marriage" has authorized the filing of a divorce proceeding in circumstances such as exist here, or a proceeding in the nature of a divorce proceeding wherein the nullity of the void marriage might be ascertained and declared.

I see no reason for reversing the judgment of the trial court insofar as it allows an attorney's fee to defendant in error's attorney. It was proper under 12 O. S. 1941 § 1276.

I therefore dissent to the majority opinion insofar as it disallows the attorney's fee, but concur therein on all other questions.

I am authorized to say that Vice Chief Justice CORN concurs in these views.

---

ARNOLD, J. (dissenting). Mary P. Whitney sued Wayne Whitney in the district court for a divorce, and other appropriate relief with respect to their minor children and property. She alleged that "On October 1, A. D. 1928, plaintiff and defendant were married in Oklahoma City and ever since that date have been husband and wife."

The ground for divorce was extreme cruelty. Whitney filed an answer wherein he denied the marriage in Oklahoma City; set out in detail his marriage to another woman in 1913 and asserted that that marriage had never been dissolved; and by reason of the marriage existing between him and another woman he was incapable of contracting a marriage with plaintiff in 1928.

During the trial, the fact that Whitney had a living wife in 1928 and was still bound in matrimony to her at the time of the trial became so obvious that plaintiff asked and was given permission to amend her petition to allege as ground for divorce that Whitney had a former wife living at the time of the alleged marriage to her.

At the close of the hearing plaintiff was granted a divorce from Whitney on the ground that he had a living wife at the time he married plaintiff in 1928. The matter of settlement of property rights and the custody of the children was deferred, and settled at a later hearing.

The appeal involves all the issues disposed of by the trial court. However, it is proper to say at this point that no contest is presented to us concerning the children. Their custody was given to their mother; Whitney contracted to pay a sum monthly for the support of each child; the trial court ordered him to pay a monthly sum for their support; and we are not asked to review or interfere with this aspect of the case. The trial judge was solicitous for the legitimacy of these children and properly so. It is observed that Whitney has never denied their paternity, and in all of the records and proceedings before us has recognized them as his children.

At the time plaintiff and Whitney undertook to establish a marital status he was a married man having then a wife from whom he was not divorced and to whom he was bound in legal marriage. Whitney's contention that the alleged marriage with plaintiff was bigamous and void is correct. The Constitution of Oklahoma, article 1, section 2, in legal effect, declares it void. It says "Polygamous or plural marriages are forever prohibited." Said marriage was also void by virtue of 21 O. S. 1941 § 881. It says "Every person who having been married to another who remains living, marries any other person except in cases specified in the next section is guilty of bigamy." 21 O. S. 1941 § 883 makes bigamy a felony. At common law a polygamous marriage is void. See R. C. L. p. 445; 35 Am. Jur. 271. Therefore, Whitney was incapable of entering into a contract of marriage with the plaintiff and the parties' attempted marriage was void ab initio.

Common-law marriages are recognized in this state and what we have heretofore said applies with equal force to such marriages. No further attention, therefore, need be given the distinction attempted to be drawn between ceremonial and unceremonial marriages in this state.

Courts of equity may entertain suits to adjudge the nullity of any void contract, so unquestionably the plaintiff in this action might have maintained a suit in equity to nullify the purported contract of marriage. However, the remedy of divorce was also available. The Legislature had the unquestioned power to authorize the bringing of such an action in our divorce courts, which are creatures of our legislative body, and authorize divorcement on the ground of incapability of one of the parties by reason of the existence of a living spouse. This it did by 12 O. S. 1941 § 1271-(1), wherein it provided, as a ground for divorce, "when either of the parties had a former husband or wife living at the time of the subsequent marriage." By this provision the Legislature authorized the bringing of an action for divorce by a so-called husband or wife on such ground. If the divorce court affords no other benefit to the aggrieved spouse than to obtain a mere declaration of nullity and a division of partnership property, there can be no reason for the foregoing provision. I cannot believe the Legislature intended to do a useless thing. There are good reasons why I think the Legislature so authorized such a person, while it failed to authorize the bringing of a divorce action in any other case where the contract of marriage was void ab initio. The family is the most sacred of all human institutions and its preservation and integrity and the welfare of children are matters of very vital public concern. The Legislature evidently knew, as I know, that a party to a marriage contract might be, while wholly innocent of any wrongdoing, imposed upon grossly by the other party in the manner as contended by the plaintiff herein. Knowledge of a living spouse of a party to a marriage contract might easily be unknown to the other contracting party and such a fact easily be fraudulently undisclosed or covered up. Such a defrauded party to such a void marriage, if innocent of any wrongdoing or knowledge thereof, would morally be entitled to the same protection, rights and privileges as one who was lawfully married, and while the children of such a void marriage are legitimate by virtue of 84 O. S. 1941 § 215, they are likewise entitled morally to the same rights and privileges, incident to a lawful marriage, as children born in lawful wedlock.

I think the Legislature, when it considered the grounds for divorce enumerated in our statutes, had in mind these impelling reasons and therefore saw fit, to the exclusion of all other instances, to provide that such a marriage, sacred as it is from the standpoint of innocent participants, should be dissolved and the void contract resting thereon should be adjudged null and void by divorce proceeding and the parties thereto dealt with equitably under all our divorce statutes. By this provision of the statute such a person, as the plaintiff in this case, is placed in the category of those who may obtain a divorce. Being in the same category as all others who are entitled to maintain an action in a divorce court, she is entitled to all the rights and privileges incident to a lawful marriage relationship; all the statutes applicable to ordinary divorce actions and those relative to child support, division of property, attorney fees, costs, etc., are applicable.

As positive evidence of the intention of the Legislature to extend provisions of our divorce laws to such cases as the instant cause I refer to 12 O. S. 1941 § 1275. It provides:

"When the parties appear to be in equal wrong the court may in its discretion refuse to grant a divorce, and in any such case or in any other case where a divorce is refused, the court may for good cause shown make such order as may be proper for the custody, mainte-

nance and education of the children, and for the control and equitable division and disposition of the property of the parties, or of either of them, as may be proper, equitable and just, having due regard to the time and manner of acquiring such property, whether the title thereto be in either or both or (sic) said parties."

Then, too, by 12 O. S. 1941 § 1283, provision is made for annulling the attempted marriage of parties *incapable from want* of age or understanding, the children of such marriage are declared legitimate. The emphasized expressions in the foregoing sections are self-indicative and explanatory and inescapably point to the fact that the Legislature intended that justice might be done by the application of all provisions of our divorce laws in proper cases and under appropriate circumstances. (Note: The last-mentioned section only gives the right of annulment to those who are incapable by reason of want of age or understanding. Of all those prohibited from entering into a marriage relationship provision for relief, in any form under the divorce laws, is made only in behalf of parties incapable by want of age or understanding and those imposed upon by the fraud and chicanery, such as in the instant case, by one who has a living spouse.)

Ordinarily people who have a surviving spouse will not attempt a remarriage, and likewise ordinarily a person, especially a woman, will not marry one who she knows has a surviving spouse, so it is to be presumed that one who is married to another who has a surviving spouse entered into said marriage innocently and without knowledge of facts that make the contract void. In the instant case you have on the one hand a presumably innocent person with children (children are always innocent of the charges herein laid) and on the other a lawyer and successful business man who knew he had a living wife. Such a person as the plaintiff herein, if innocent, would morally be entitled to as much or more consideration than a lawful wife who had not been imposed upon by such fraud and chicanery as that alleged, for the infamy imposed upon her by the fraud and criminal conduct of such other party will live throughout life. Good morals, common sense, and equity indicate to my mind that our Legislature intended, by the inclusion of this ground of divorce, to extend the application of our divorce laws to such parties.

The divorce laws, if applicable, would give the wife and the innocent children of such a relationship rights that they do not have if relegated to the forum of general equity. Under our divorce statutes provision can be made for the care and maintenance of the minor children and, in the division of property, consideration may be given to the relationship of the mother to their care, maintenance, and education. By reason of the foregoing legitimatizing statute the children of this marriage are legitimate and do not have the protection provided for bastard children. To hold that the Legislature did not have the power to extend the divorce laws of this state to such parties or to hold that the Legislature did not intend to do so, would worse than bastardize the children herein. The Legislature did have this power and such statutes as section 1271, supra, should be liberally construed so as to extend the applicability of our divorce statutes to such parties and their children. In so doing no injustice would be done. The parties' guilty knowledge or conduct will be properly determined and justice as between the parties—particularly as to the children—will be done. Courts of equity should not be restricted by strict interpretation that they cannot do justice or be compelled to do an injustice.

The trial court had all the witnesses before it and had full opportunity to hear their testimony and observe their demeanor and no doubt properly evaluated the weight and credit to be accorded their testimony. It patiently heard the parties to this case over a long period of time and no doubt gave earnest consideration to all the testimony, in-

cluding that regarding the responsibility of the defendant to another wife of many years, and concluded that the contract of settlement between the parties was not conscionable, awarded custody of the children to the mother and decreed her a divorce and divided the property and assessed attorney fees and costs. The majority opinion is not based on inadequacy of proof in any respect nor is it founded upon a determination by us that the judgment of the trial court is clearly contrary to the evidence. The determination of the court in these respects should be affirmed.

The majority opinion recognizes and judicially approves the divorce in this case, but permits one, who knowingly violated the marriage laws of this state with knowledge of the provision of the statute that his marriage status with another constituted grounds for divorce, to escape the legal responsibility that would attach to him if his marriage had been contracted and entered into by him legally and in good faith.

I do not believe our Legislature ever intended any such inequity. To so hold is to do violence to the evident intention of the Legislature, which is based upon good morals and decency, the protection of innocent persons against the vilest kind of chicanery, fraud and criminal conduct.

I therefore respectfully dissent.