2016 OK 112

**In the MATTER OF the ESTATE OF Bobby Joe BROWN, Jr., Deceased.**

Rhonda Brown, Plaintiff/Appellant,

v.

Ami Alley, Personal Representative of the Estate of Bobby Joe Brown, Jr., and as Parent and Next Friend of A.B. and K.B., Minors, Defendant/Appellee.

Case Number: 113000

Supreme Court of Oklahoma.

Decided: 11/01/2016

**ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION 2**

¶ 0 Appellant sought to revoke the letters of administration of appellee, Ami Alley, who was determined to be the surviving spouse of the decedent Bobby Joe Brown, Jr., through a valid common law marriage. Appellant claimed to be the surviving spouse through a valid ceremonial marriage, prior to the common law marriage, with no divorce from decedent. The trial court held in favor of Alley, and the Court of Civil Appeals affirmed. We affirm.

**AFFIRMED**

Cameron Cherry, Edmond, Oklahoma, and B. Wayne Dabney, Oklahoma City, Oklahoma, for Appellant,

Murry J. Parrish, Forest Lynn Pepper DeVaughn, Oklahoma City, Oklahoma, for Appellee.

**OPINION**

WATT, J.:

¶ 1 The issue in this cause is whether the Plaintiff/Appellant Rhonda Brown is estopped from asserting her status as the surviving spouse of the Decedent, Bobby Joe Brown, Jr. The trial court held that estoppel prevented her from claiming such status, thus preventing her appointment as the Personal Representative of Decedent's estate. On appeal, the Court of Civil Appeals (COCA) affirmed. This Court previously granted certiorari.[1] We hold the trial court properly held Appellant is estopped from asserting she should be appointed Personal Representative of Decedent's estate.

## STANDARD OF REVIEW

¶ 2 Probate proceedings are matters of equitable cognizance, and on review we must accord deference to the trial court's determination of the facts. The trial judge has the opportunity to observe the conduct and demeanor of the witnesses, and we will not disturb the trial court's findings of fact unless they are clearly contrary to the weight of the evidence or to some governing principle of law. *In re Estate of Carlson,* 2016 OK 6, 11, 367 P.3d 486, 491; *In re Estate of Holcomb,* 2002 OK 90, 8, 63 P.3d 9, 13.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 Appellant Rhonda Brown and Bobby Joe Brown, Jr. were married on December 12, 1995, and three children were born of the marriage. One child is deceased. Rhonda testified that after a few years of marriage, she told Bobby she could no longer stay with him if he did not cease his extra-marital affairs. He did not comply with this condition, and Rhonda moved out of the marital home. They were never divorced through a court proceeding. She moved frequently and, at different times, lived in several Oklahoma cities, as well as in Kansas. Two of her children by a different father were removed by DHS from her home when she lived in Kansas.

¶ 4 Rhonda testified that after they separated, she and Bobby met numerous times for the purpose of being intimate. She stated Bobby referred to her as his wife to everyone they met. She also stated that they walked arm in arm and were constantly showing affection for each other in public by hugging and kissing.

¶ 5 After Bobby and Rhonda separated, he began living with Ami Alley on or about July 23, 2004. Two children were born to the couple. Ami testified she and Bobby held themselves out as husband and wife to everyone and established a home together in Perry, Oklahoma. Ami also testified that Bobby came home to her and their children every night and that he told her he loved her.[2]

¶ 6 Rhonda testified she was aware of the relationship between Ami and Bobby and that he was living with her and their two children. Rhonda testified that Bobby referred to Ami as his girlfriend.

¶ 7 On March 6, 2013, Bobby died in a motorcycle accident. Ami was named Personal Representative of his estate upon the court's finding she was Bobby's surviving spouse in a common law marriage. Rhonda was not sent notice of the proceeding, and Ami did not advise the court of Rhonda's relationship with Bobby. Ami explained that the court asked if there was anybody to object, and no one appeared to do so. She said the court did not ask about Rhonda, and she did not raise the issue. She also testified Rhonda knew about the proceeding but

---

1. The companion case, appeal number 113,001, was closed on December 11, 2015. Mandate issued on January 5, 2016.

2. Ami testified she had no reason to question his love for her. She said, "I trusted him every night and he was at home every night. If he was away from my house for long, me and my children would be asking questions." Transcript of hearing of May 22, 2014, page 110.

would not give Ami her address.[3] Ami also testified that she heard the testimony of a friend of Rhonda's that the friend took Rhonda for a rendevous with Bobby at places where she and Bobby both worked, i.e., "Sooner's Corner", and Taco Mayo. Ami took issue with the testimony, saying:

Q. Would those have been times you worked there?

A. Yes.

Q. Did you ever see any evidence of that?

A. No. And if there was evidence of that, my co-workers would have told me.

Q. We also heard evidence of Taco Mayo rendezvous. Have you heard in connection with Taco Mayo?

A. Yes, I do. I've worked there twice. My first time was when my youngest daughter Kandyce was three weeks old, March of 2006 until August of 2008 when I started working at Sooner's.

Q. These alleged rendezvous that happened at Taco Mayo, when you were working there, do you think it's possible you would have had some sort of knowledge of that?

A. I would have if it was going on, yes.

Q. Somebody would have told you?

A. Yes.

¶ 8 As noted above, it is undisputed that Rhonda and Bobby were never divorced in a judicial proceeding. Rhonda testified that, a short time before Bobby's death, she participated in a ceremonial marriage with Jimmy Shawn Treece. She referred to the marriage as a "sham" because she never intended to be married to Treece. Rhonda testified she met Jimmy while they were both living in a state-supported shelter when they were minors. She stated that when she was 15 years old, she and Treece agreed they would marry each other if one or the other was in need of help at some time in the future. Rhonda testified that after Treece was incarcerated, he finished his probation and parole, upon approval by the authorities, at his grandparents' home. They took care of him and supported him. Although he wanted to move out, the only way his grandparents would help him financially was to "show some stability and get married...."[4] Rhonda testified she was willing to help him. On August 31, 2012, they went to his grandparents' home in Checotah, Oklahoma, to tell them she and Jimmy were getting married. His grandparents immediately contacted a minister who performed the ceremony the same day at a church in Checotah. Rhonda signed the marriage license as "Rhonda Ann Treece."[5] After the ceremony, Jimmy took her home. She testified she removed the wedding ring. She placed it and the papers they received in the glove compartment of Treece's car. She stated she spoke to him on two occasions, but she never saw him again. She testified she never changed her name and did not "recognize that name as a legal marriage."[6] She testified she never filed divorce papers but was "under the impression" the marriage was annulled.[7] She stated she does not intend to be married to Treece; she only did it to help him out. Treece did not testify.

¶ 9 In the judgment denying Rhonda's Petition and Motion to Revoke Letters of Administration, the trial court found Bobby and Ami began their relationship in 2004 and that it lasted until Bobby's death; that their relationship met the requirements of a common law marriage;[8] and that Rhonda married Treece in a ceremonial, traditional marriage in 2012. The court based its decision to deny Rhonda's motion to revoke the

---

**3.** Ami stated:

"Rhonda was given notice. I have many text messages on my cell phone trying to get an answer from her and she refuses to give me an address, refused to come to court." (Transcript of hearing of May 22, 2014, page 116).

**4.** Transcript, page 30, May 22, 2014, hearing.

**5.** Transcript, page 51, May 22, 2014, hearing.

**6.** Transcript, page 32, May 22, 2014, hearing.

**7.** Transcript, page 57, May 22, 2014, hearing.

**8.** A common law marriage requires competent parties, who enter the relationship by mutual agreement, exclusive of all others, consummating arrangement [sic] by cohabitation and open assumption of marital duties, and such relationship must be established by evidence that is clear and convincing. See gen., *Mueggenborg v. Walling*, 1992 OK 121, 836 P.2d 112, citing *Rath v. Maness*, 1970 OK 111, 15, 470 P.2d 1011, 1013.

letters of administration on the issue of estoppel, rather than the legal classification of her marriage to Bobby. The court concluded:

> The Oklahoma Supreme court case of Matter of Estate of Allen, 1987 OK 45, 738 P.2d 142 (1987) is nearly on point with the case at bar. While there was [a] great deal of conflicting testimony about the post separation relationship between Rhonda and the Decedent, the real issue is whether Rhonda should be estopped from claiming surviving spouse benefits and not so much the legal classification of her marriage to the Decedent.

> Estoppel is a bar raised by the law which precludes one from alleging or from denying a certain fact or state of facts in consequence of the previous allegation, denial, conduct, or admission or in consequence of a final adjudication of the matter by a court of law. Allen quoting from Wisel v. Terhune. 201 Okla. 231, 204 P.2d 286, 290 (1949). The formal ceremonial marriage by Rhonda to Treece is, by itself, a previous denial vis a vis her marriage to the Decedent. Despite her unsubstantiated testimony to the contrary, a later marriage is in fact, a denial of any prior marriage.

### DISCUSSION AND AUTHORITY

¶10 The Oklahoma Constitution contains a prohibition against polygamous or plural marriages.[9] Such marriages are void ab initio.[10] Also, we recognize there is no common law divorce. However, in this case, we are not explicitly determining whether our laws defining and regulating marriage in Oklahoma were violated, but whether the doctrine of estoppel precludes Rhonda from being declared Bobby's surviving spouse and the Administrator/Personal Representative of his estate. We hold that it does.

¶11 In In re Estate of Allen, 1987 OK 45, 738 P.2d 142, this Court examined the multiple marriages of a couple who were married, divorced, remarried and then permanently separated, with no divorce. Wife cohabited with another man ("second husband"), and

four children were born to the couple. Second husband filed for divorce and sought custody of the children. Wife admitted a common law marriage and also sought custody of the children. The court found a common law marriage existed and entered a divorce decree. Meanwhile, first husband married another woman who later died. No children resulted from that marriage. Then, first husband died. He left his estate to his son from an earlier marriage, and Wife petitioned for letters of administration and appointment as personal representative as surviving spouse. She argued she was still married to first husband because there was no divorce. The trial court agreed, but this Court held that she was estopped to claim the status of surviving spouse to her first husband. We reasoned that she had had an opportunity for 13 years to assert a marital relationship with her first husband, but she never did. We stated:

> Given the facts in this case, appellee is estopped from asserting her continual marital status with the decedent. Appellee had the opportunity for thirteen years to assert her relationship with the decedent, but declined to do so until the decedent's death. She cannot "speak" now after she has been silent for so long.

Allen, 1987 OK 45, 9, 738 P.2d 142, 144. The Court described the theory of "estoppel" as, "if you do not speak when you ought to speak, you shall not speak when you want to speak." Id. This Court held that because of her previous conduct, the appellee wife should have no claim to her former husband's estate, despite the lack of a divorce.

¶12 In the present case, the facts which were alleged by the respective parties were disputed. Rhonda testified that her relationship with Bobby never ended until he died. She related instances of his declarations of love to her, their intimacy, and his visits to her which included numerous overnight stays. This testimony about their relationship was confirmed by her witnesses who alleged they witnessed the affection shown between Bobby and Rhonda. However, the evidence of the continued relationship between them

---

9. See Oklahoma Constitution, Art. 1, 2:
   [P]olygamous or plural marriages are forever prohibited.

10. See Whitney v. Whitney, 1942 OK 268, 192 Okla. 174, 134 P.2d 357.

stood in stark contrast to the testimony of Ami Alley who was Bobby's professed common law wife, beginning in 2004. Ami's testimony that Bobby was with her at home every night and that he did not travel to see Rhonda, except the times when Ami was present totally contradicts Rhonda's testimony. The trial court was trier of fact and determined the post-marriage events in favor of Ami. We do not find the court's factual findings are clearly contrary to the weight of the evidence or contrary to law. See *In re Estate of Carlson*, and *In re Estate of Holcomb, supra.* The evidence in support of the court's determination included witnesses who were told that Ami and Bobby were married and who witnessed their life together for nearly ten years. Moreover, Rhonda's testimony that she gave Bobby an ultimatum about his extra-marital affairs in 1999 indicates her willingness to separate from him, rather than to endure his alleged infidelity.

¶ 13 Finally, the subsequent marriage to Jimmy Treece, which is substantiated by a copy of the marriage license and by the testimony of Rhonda herself, is further evidence that she considered her marriage to Bobby was at an end. While this Court is aware of Rhonda's articulated reason for her marriage to Jimmy Treece, i.e., to help him out, her actions in engaging in a "sham" marriage to defraud Treece's grandparents offer little to persuade the Court that equitable estoppel should not be applied against her. Moreover, she and Bobby had ceased living as husband and wife for several years, during which he lived with another woman and with whom he had two children. Rhonda's signature on the marriage license, dated August 31, 2012, as "Rhonda Ann Treece"[11] and her admission that she and Treece had been intimate before the marriage are further evidence Rhonda believed her marriage to Bobby had terminated.

¶ 14 We note that in a previous case, *Darrough v. Davis*, 1928 OK 730, 135 Okla. 263, 275 P. 309, 273 P. 309, similar to *Allen*, supra, the deceased person was the party who was abandoned during the marriage, while in this case, the deceased person (Bobby) is the party who engaged in a common law marriage relationship without officially ending his marriage to Rhonda. However, the evidence which was presented at the hearing, although disputed, supports the court's finding that Rhonda's subsequent marriage to Treece, despite her disavowal of it as a valid marriage, is an act which was contrary to Rhonda's expressed intent to remain married to Bobby at the time.

### CONCLUSION

¶ 15 As the fact finder who observed the testimony, the trial court was in the best position to consider the demeanor and credibility of the witnesses who testified. Ami's testimony as to the alleged common law marriage and Bobby's presence at home every night contradicted Rhonda's testimony that he spent numerous nights with her away from home. The testimony that Rhonda was taken by a friend to meet Bobby at a place where he and Ami both worked appears to be disputed because Ami testified she would have been told by fellow employees that this occurred. Finally, Rhonda's testimony that she participated in a ceremonial marriage ceremony with Jimmy Treece, as evidenced by a copy of the marriage license entered into evidence, had to be weighed against Rhonda's testimony that the marriage was meaningless. We find the trial court's determination of the facts is not against the weight of the evidence.

¶ 16 AFFIRMED.

REIF, C.J., WATT, WINCHESTER, EDMONDSON, GURICH, JJ., BASS, S.J.—CONCUR

COMBS, V.C.J. (by separate writing), KAUGER, TAYLOR, JJ.—DISSENT

COLBERT, J.—RECUSED

COMBS, V.C.J., dissenting, with whom KAUGER and TAYLOR, JJ., join:

¶ 1 I disagree with the majority's determination that Appellant is estopped from as-

---

11. She signed "Rhonda Ann Treece" on the line above "Female's Name to be known as—Signature".

serting she should be appointed Personal Representative of Decedent's estate. Appellant, as the surviving spouse of the Decedent, has a prior right of appointment pursuant to 58 O.S. 2011 122, that is unaffected by the void ceremonial and common law marriages later attempted by herself and Decedent, respectively. Accordingly, I respectfully dissent.

¶2 Marriage is a personal relationship which arises out of a civil contract. It requires the consent of parties who must be legally competent to contract. Title 43 O.S. 2011 1. One of the requirements for legal competency to enter into the marriage contract is that the individual not be already married. Title 43 O.S. 2011 3(A). *See Brokeshoulder v. Brokeshoulder*, 1921 OK 412, 84 Okla. 249, 204 P. 284, Syllabus, 84 Okla. 249, 204 P. 284.

¶3 Oklahoma does not recognize the concept of common law divorce. *See Chapman v. Parr*, 1974 OK 46, 32, 521 P.2d 799. Divorce is wholly a creature of statute and the absolute power to prescribe conditions relative thereto is vested in the state. *Williams v. Williams*, 1975 OK 163, 9, 543 P.2d 1401. The statutory grounds of divorce are exclusive, and the courts have authority in this field to do only that which is prescribed by the legislature. The legislature has vested the courts of this state with ultimate control over the dissolution of marriage. *Williams*, 1975 OK 163, 543 P.2d 1401, 10. It is undisputed in this cause that Appellant and the Deceased were married in 1995 and never divorced by court proceeding. Unquestionably, neither of them were legally competent to enter into other marriages, be they ceremonial or common law.

¶4 Further, the Oklahoma Constitution specifically prohibits plural marriages. Okla. Const., Art. 1, 2 provides in pertinent part: "[p]olygamous or plural marriages are forever prohibited." This Court has determined previously that plural marriages, being prohibited by the constitution, are void ab initio and such a marriage, whether ceremonial or common law, does not confer on either of the parties any of the rights or privileges of a valid marriage. *See Tatum v. Tatum*, 1982 OK 62, 18, 736 P.2d 506; *Whitney v. Whitney*, 1942 OK 268, 192 Okla. 174, 134 P.2d 357, Syllabus, 12–18, 192 Okla. 174, 134 P.2d 357. The trial court erroneously determined that the relationship between Decedent and Appellee met all the requirements of a common law marriage. One of those requirements is legal competency to enter the marriage contract, which Decedent lacked. *Mueggenborg v. Walling*, 1992 OK 121, 5, 836 P.2d 112; *Rath v. Maness*, 1970 OK 111, 15, 470 P.2d 1011 (criticized by *Mueggenborg*, but on other grounds).

¶5 Despite her legal status as Decedant's wife at the time of his death, the majority determines that Appellant is estopped from asserting she should be appointed Personal Representative of Decedent's estate. Equitable estoppel is a legal concept which bars a party from alleging or denying certain rights which might otherwise have existed because of the party's voluntary conduct. *Sullivan v. Buckhorn Ranch Partnership*, 2005 OK 41, 30, 119 P.3d 192; *Hoar v. Aetna Casualty & Surety Co.*, 1998 OK 95, 13, 968 P.2d 1219; *Apex Siding & Roofing Co. v. First Federal Savings & Loan Assoc. of Shawnee*, 1956 OK 195, 6, 301 P.2d 352. It requires good faith reliance upon a representation or position by the party asserting estoppel. *Sullivan*, 2005 OK 41, 30, 119 P.3d 192; *Hoar*, 1998 OK 95, 13, 968 P.2d 1219; *First State Bank v. Diamond Plastics Corp.*, 1995 OK 21, 39, 891 P.2d 1262. This Court noted in detail the requirements for equitable estoppel in *Sullivan*, where we stated:

> The essential elements necessary to establish equitable estoppel are: first, there must be a false representation or concealment of facts; second, it must have been made with actual or constructive knowledge of the real facts; third, the party to whom it was made must have been without knowledge, or the means of discovering the real facts; fourth, it must have been made with the intention that it should be acted upon; and fifth, the party to whom it was made relied on, or acted upon it to his or her detriment.

*Sullivan*, 2005 OK 41, 31, 119 P.3d 192 (footnotes omitted) (citing *Burdick v. Independent School Dist. No., 52 of Oklahoma County*, 1985 OK 49, 13, 702 P.2d 48; *Midland*

*Mortg. Co. v. Sanders England Investments*, 1984 OK 10, 6, 682 P.2d 748; *Walker & Withrow, Inc. v. Haley*, 1982 OK 107, 7, 653 P.2d 191).

¶ 6 The requirements of equitable estoppel have not been met in this cause. Appellee was aware of Appellant and Decedent's marriage when she was named personal representative. As the majority notes: "[Ami] said the court did not ask about Rhonda, and she did not raise the issue." Estoppel is used to prevent injustice and promote justice, and should not be used to work a positive gain to a party. *Sullivan*, 2005 OK 41, 30, 119 P.3d 192; *First State Bank*, 1995 OK 21, 40, 891 P.2d 1262.

¶ 7 The majority's reliance on *In re Estate of Allen*, 1987 OK 45, 738 P.2d 142, is misplaced because that cause is factually distinguishable. In *Allen*, this Court's application of the doctrine of equitable estoppel to bar a wife's claim for a share of her deceased husband's estate was primarily based on the wife's assertion of a later common law marriage in a divorce proceeding, resulting in a non-appealable divorce decree even though the common law marriage was void ab initio. *Allen*, 1987 OK 45, 5, 738 P.2d 142. The *Allen* Court stated:

The predicate facts in this case constitute affirmative acts which give rise to a legal change in appellee's marital relationship with decedent. In particular, appellee's cohabitation with Gould and her affirmative recognition of her subsequent common law marriage to Gould. **We therefore find appellee's prior assertion of legal status and judicial finding and decree from which there was no appeal operates as a bar to her later inconsistent claim.**

1987 OK 45, 7, 738 P.2d 142 (emphasis added).

In *Allen*, the application of equitable estoppel rested on the wife's assertion in a court of law that she was married to someone else, before trying to assert a claim on her real husband's estate, rather than the act of attempting a void ab initio marriage in and of itself.

¶ 8 Even were it not distinguishable, I believe *Allen* was wrongly decided and should not be followed by this Court, for two

reasons. First, the Court's decision in *Allen* is inconsistent with earlier cases concerning the application of equitable estoppel to estate claims. *See In re Estate of Cox*, 1923 OK 397, 95 Okla. 14, 217 P. 493 ("Although the wife deserts her husband, and enters into a bigamous marriage with another, with whom she lives until her husband's death, in the absence of a statute, she cannot be precluded or estopped from asserting her interest in his estate."); *Brokeshoulder*, 1921 OK 412, 64–65, 84 Okla. 249, 204 P. 284 (expressing willingness to apply estoppel only between parties to an illicit marriage when one party concealed their incapacity). *See also Allen*, 1987 OK 45, 1–6, 738 P.2d 142 (Kauger, J., dissenting). Second, the *Allen* Court partially based its decision on dicta from a prior opinion, *Tatum v. Tatum*, 1982 OK 62, 736 P.2d 506, specifically this statement:

We did, however, state affirmative acts may indicate a change in character of the marriage relationship and that such legal change could manifest itself through some outward recognition that the relationship had terminated. We noted affirmative acts which might be recognized as changing the legal status such as suing for divorce or separate maintenance, active resistance to reconciliation efforts or cohabitation with another. Such indicia were found absent in that case.

*Allen*, 1987 OK 45, 6, 738 P.2d 142 (citing *Tatum*, 1982 OK 62, 14, 736 P.2d 506).

Such reasoning is inconsistent with the statutory nature of termination of the marriage contract, and the requirement divorce be adjudicated by the courts.

¶ 9 The majority's decision, and reliance on *Allen*, is effectively a determination that Appellant's void attempted ceremonial marriage to Treece somehow altered her legal relationship as Decedent's wife at the time of his death. It did not, as Oklahoma law concerning plural marriages and capacity to enter the marriage contract, discussed above, perfectly illustrate. Framing the issue as one of equitable estoppel does not alter this, as *Allen* is inapplicable and the modern require-

ments for equitable estoppel emphasized by this Court on numerous occasions have not been met. Appellant, as the surviving spouse of the Decedent, has a prior right of appointment pursuant to 58 O.S. 2011 122, and should not be estopped from asserting that right because she was separated from Decedent and entered into a void ab initio ceremonial marriage with someone else.