**HILL et al. v. JONES.**

No. 26470.   Feb. 23, 1937.

Rehearing Denied June 22, 1937.

A. K. Little and A. H. Ferguson, for plaintiffs in error.

D. S. McDonald and C. P. Abbott, for defendant in error.

PHELPS, J. Plaintiff in the trial court, defendant in error here, has moved to dismiss this appeal by reason of certain claimed irregularities in the settlement of the case-made. The motion was heretofore denied, but has been re-presented in the brief of defendant in error. The same principles apply as are involved in the cases of American Surety Co. v. Wolsey, 163 Okla. 270, 20 P. (2d) 158; Embry, Receiver, v. Villines, 175 Okla. 552, 53 P. (2d) 277, and Security Bldg. & Loan Ass'n v. Ward, 174 Okla. 238, 50 P. (2d) 651, and on the authority of those cases we adhere to our former ruling.

Wilson Moseley, an enrolled full-blood Choctaw Indian, died intestate on November 7, 1910. The blood relatives left surviving him were Lorena Byington, a sister, and Reason Jones and Robert H. Jones, nephews, also Indians, the said nephews being sons of a deceased sister of Wilson Moseley. Reason Jones later died and his estate was inherited by his brother, Robert H. Jones.

When Wilson Moseley died, his estate consisted of the land constituting his original allotment. There was no probate of this estate. Shortly after his death Katie Moseley, an Indian, as his surviving wife or widow, conveyed to Mhoon and Lynch an undivided one-half interest in the above-mentioned land, which constituted the estate of the deceased Wilson Moseley. This is the share into which she would have come by the statutes of succession and distribution. That she was in fact his widow appears to have been taken for granted at that time by all of the parties interested or who could have raised the question. Under the federal statutes in force, the county judge approved the deed, from Katie Moseley to Mhoon and Lynch, as the widow of decedent, and the order expressly so found that she was his widow. It appears that Lorena Byington, the surviving sister of decedent, also considered Katie Moseley as having been the wife of Wilson Moseley, for Lorena Byington filed a petition in the county court at that time in which she represented on her oath that Katie Moseley was his widow. This petition was for the purpose of securing the approval of the court to a deed executed by her (Lorena Byington) to the same grantees to whom the widow had conveyed, conveying her one-fourth interest in the land.

Robert H. Jones and Reason Jones at that time were minors, and a guardian had been appointed for them. The guardian petitioned the county court, in the guardianship proceedings, for authority to sell the interest of the minors, describing said interest as an undivided one-fourth. This petition to sell likewise expressly represented to the court that Katie Moseley (who had theretofore conveyed a one-half interest to Mhoon and Lynch) was the widow of Wilson Moseley. The petition to sell the minors' undivided one-fourth interest was approved and on May 19, 1911, the guardian's deed was executed, conveying said interest to Lynch, the same grantee as in the other two deeds. This guardian's deed was filed on May 31, 1911.

By various conveyances the interests in the estate thus bought by Mhoon and Lynch, from the three above-mentioned grantors, and comprising the entire estate, eventually became vested in the defendants in the present action, who appeared by the records to be the owners thereof. In the meantime the former minor, Robert H. Jones, had reached majority, having become 21 years of age in 1920. When he was in the neighborhood of 30 years of age, he and the aforesaid Lorena Byington filed this action against the defendants for the recovery of an undivided one-half interest in the estate. Their action does not question the validity of the transfers formerly made by them to the grantors of the defendants, and they admit that the defendants thereby obtained title to an undivided one-half interest. They now contend, however, that Katie Moseley was never the wife or the widow of Wilson Moseley, that therefore she did not inherit any interest in Wilson Moseley's estate, was without power to convey the undivided one-half interest in the estate to the grantors

of defendants, and that that undivided one-half interest therefore became vested in them. This action, then, was for the recovery of said undivided one-half interest formerly conveyed by the said Katie Moseley as the widow of Wilson Moseley. The trial court denied recovery to the plaintiff Lorena Byington (who has not appealed), but entered judgment in favor of plaintiff Robert H. Jones for the recovery of an undivided one-fourth interest in the land, plus a money judgment for the use and occupancy thereof. The defendants appeal.

Among the propositions advanced by the defendants (plaintiffs in error) is the contention that the judgment is not sustained by the evidence and the law. In this connection they urge that the evidence did not warrant the trial judge in finding that Katie Moseley was not the wife of Wilson Moseley.

Before beginning a discussion of the evidence it is necessary to determine upon whom rested the burden of proof. Was it incumbent upon the plaintiffs to prove that there was not a marriage relationship between Wilson Moseley and Katie Moseley, or was the burden upon the defendants, on the other hand, to prove that the marriage relationship existed? We think that under the facts of this particular case the burden was upon the plaintiffs to prove that no such relationship existed. In addition to the fact that the burden of proof is usually upon the plaintiff to establish the material allegations of his petition, it must further be realized that in the instant case the essence of the plaintiffs' action was the attacking of what appeared on the face of things, and on the records for a quarter of a century, to be a valid marriage.

Court orders had long since been entered to that effect, and the state of the title had depended during all of that period upon the relationship. During that period the rights of third parties had intervened. The condition, too, was largely brought about by the representations of one of the plaintiffs herself, solemnly made in court to the effect that Katie Moseley was the widow of Wilson Moseley; and like representations of the then guardian of Robert H. Jones. However, for the reason that we do not base this decision upon the principles of estoppel, we do not consider the legal effect of the representations made at that time by said guardian. It is sufficient for the purposes of this case that to all appearances and purposes the world in general had assumed for a long period of years that this property had descended in part from the widow of Wilson Moseley.

Assuming that under the circumstances the plaintiffs would be allowed to attack the validity of the marriage at this late date, there can be no doubt that the burden of proof was upon them to show that Katie Moseley was not Wilson Moseley's widow, and upon such proof the success of their action depended.

It now becomes pertinent to observe the weight of such a burden. In Chancey v. Whinnery, 47 Okla. 272, 147 P. 1036, we held in the fourth paragraph of the syllabus that the law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it that such requirement is enforced even though it involve the proving of a negative. Using Bishop on Marriage, Divorce and Separation, sections 77, 956, 958, as authority, we said:

"It being for the highest good of the parties, of the children, and of the community that all intercourse between sexes in form matrimonial should be such in fact, the law, when administered by enlightened judges, seizes upon all probabilities and presses into its service all things else which can help it, in each particular case, to sustain the marriage, and repel the conclusion of unlawful commerce."

It was pointed out in that case, and from consideration of public policy it is the universal rule, that the presumption of marriage is one of the strongest known to the law, that every intendment of law is in favor of matrimony, that:

"The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced, even though it involve the proving a negative. When a marriage has been shown in evidence, whether er regular or irregular, and whatever the form of the proofs, the law raises a presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout and in every particular plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void. Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560. The salutary rule so widely recognized and enforced should a fortiori find lodgment in the courts of this state, where the parties to the marriage relations are all full-blood Indians, unused and unaccustomed to the laws of the whites, and to whom written laws governing their domestic relations were innovations at the time."

This rule was followed in Coleman v. James, 67 Okla. 112, 169 P. 1064, and in a number of other decisions. We therefore approach consideration of the evidence, for the

purpose of determining sufficiency thereof to sustain the judgment, with the rule in mind that the law imposes a heavier burden upon one who is seeking to invalidate an apparent marriage than is cast upon one who is merely seeking to establish said marriage.

However, before considering the evidence of plaintiffs, let us be cautious to bear in mind that a fact of strong significance is that the parties themselves and their representatives and grantors all considered Katie Moseley to be the widow of Wilson Moseley at the time of Wilson Moseley's death, when their knowledge of the circumstances and of the relationship was fresher in their minds than it is at this late date. While this may not put it beyond their power to prove the reverse at this time, it is at least circumstantial evidence of considerable importance, which should not be overlooked. It can hardly be denied that had there at that time been any doubt of the marriage relationship it would have been expressed by the blood relatives of Wilson Moseley, or by some of the close neighbors and friends, of whom there seems to have been many. The practical significance of the fact that for many years the public and the business and professional world have depended upon the validity of the relationship, and that said validity has gone unchallenged until the filing of this suit, should also be taken into consideration.

The testimony of Lorena Byington, to the effect that Wilson Moseley died without a wife surviving, is directly contradictory to her sworn pleadings in the year 1911. Having in mind the property to be gained by her as plaintiff at the present time, and such admission against her interest made by her when the facts were fresher in her mind than they are now, and recognizing that her statement that Katie Moseley was not the wife of Wilson Moseley was merely a conclusion, it leaves very little of substance to be gained from her testimony. It is true that she testified that Wilson Moseley told her that he was not married, but denials of the marriage relationship are entitled to little weight when made by the husband, as a general rule. Coleman v. James, 67 Okla. 112, 169 P. 1064. The testimony of Henry Madding, C. H. Madding, Ben Olson, John Yandell, Dora Yandell, and R. L. Pitts constituted the remainder of plaintiffs' proof. In substance they testified that for a short while prior to Wilson Moseley's death no one lived with him as his wife, or that if any one did so live with him, the witnesses did not know of it. (The evidence of defendants showed that they lived together elsewhere.) These same witnesses for plaintiffs testified that "She could have been his wife without my knowing it," "He could have been married without my knowing it," "If he came back he did not live with anybody and hold her out as his wife," "I don't know whether Wilson Moseley was married to Katie or not," "I only have Wilson's word for it that he was not," and similar statements. The weakness of that class of evidence is apparent. In rebuttal to the evidence of defendants, plaintiffs produced Abel Belvin, who testified that Wilson Moseley said "the woman over there" was not his wife, but testified to other facts which nullified whatever weight should be accorded such statement by the deceased. Charles Anderson testified to the same matter. Alfred Vinson, also in rebuttal for plaintiffs, testified that: "If Wilson was married to Katie, I didn't know anything about it. When I made this affidavit in 1915 these matters were fresher in my mind than they are now." The affidavit which he mentioned as having been made by him in 1915 was to the effect that he had known deceased (Wilson Moseley) intimately all his life, their respective families being neighbors and intimates during the entire life of said deceased, and included the following questions and answers:

"14. To whom married a second time? Ans. Katie James.

"15. Date of such second marriage? Ans. About 1909.

"16. Is this second wife still living? Ans. Yes."

It is our opinion that a careful reading of the foregoing summary of the evidence renders it unnecessary for us to elaborate on the significance thereof, or to point out in any great detail the failure of such evidence to measure up to the rule above described. It was constituted almost entirely of conclusions and negative testimony. It is apparent that a marriage could easily have existed, either ceremonial or common law in form, and the great bulk of the testimony of all of plaintiffs' witnesses could still be true. We conclude that under the rule applicable to such cases as this the burden was not sufficiently sustained by the plaintiffs.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the defendants.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY and GIBSON, JJ., concur.