Ben H. HARRISON, Edward Harrison, Emily Rulo, and Wauneta Harrison Smith, Plaintiffs in Error,

v.

T. C. BURTON, Administrator of the Estate of Emmett C. Burton, Deceased, Mrs. J. E. Burton, T. C. Burton, Ottis Burton, and Charles Burton, Defendants in Error.

No. 36184.

Supreme Court of Oklahoma.

Nov. 23, 1954.

Rehearing Denied May 2, 1956.

As Amended Dec. 4, 1956.

Application for Leave to File Second Petition for Rehearing Denied Dec. 4, 1956.

Chas. R. Gray, W. N. Palmer, Paul A. Comstock, Pawhuska, for plaintiffs in error.

F. W. Files, Pawhuska, for defendants in error.

DAVISON, Justice.

This is an appeal from the District Court of Osage County, Oklahoma, where, on appeal from the County Court of said County and trial de novo, said tribunal determined the heirs of Willa Harrison Burton, deceased, and ordered distribution of her estate to them. From that judgment and order, this appeal has been perfected by Ben H. Harrison, Edward Harrison, Emily Rulo and Wauneta Harrison Smith, the brothers and sisters of said decedent.

The deceased was born and raised in Osage County, having part Osage Indian blood but born on May 20, 1908, after completion of the final rolls of said Tribe. She was killed in an automobile wreck in South Texas on May 9, 1949. At the time of her death, she was living in Houston, Texas, where she was employed as a nurse. Living with her in an apartment, was her niece, Romanita Komorn, the daughter of Wauneta Harrison Smith, one of the appellants herein. Some time previously, Willa had, as a patient, a wealthy Houston resident, one Emmett C. Burton. One evening about the first of May, 1949, after notifying Willa by telephone, Emmett drove over to her apartment accompanied by Jennie Burton, whom he introduced to Willa and Romanita as his wife. Several weeks previously, he and Jennie had been divorced. After the introductions, Emmett, Jennie, Willa and Romanita drove around town for several hours in Emmett's car. They stopped at the palatial home of Emmett and Jennie where Willa and her niece were shown through it. In the bedroom of Emmett and Jennie were the clothes of both and all other indications of a residence of a normal married couple.

About the 4th of May, 1949, Emmett came alone to the apartment, having called a number of times on the day before. He had been drinking and, after his arrival, Willa started drinking with him. Later that day, he and Willa went to New Orleans, Louisiana. The following morning, they called Romanita on the telephone and had her come to New Orleans also. The three of them in a taxicab, drove through the different parts of town during the afternoon. The cab driver took them also to a justice of the peace who performed a marriage ceremony for Emmett and Willa. The three of them stayed in New Orleans three or four more days, while Emmett and Willa continued to drink. On the evening of the third or fourth day, Romanita drove them back to Houston and they spent the night in the apartment. The next night Emmett and Willa stayed in the apartment and Romanita stayed at a hotel. The next day, May 9, 1949, near a little adjacent town they had an automobile wreck killing Willa. Emmett was taken to a hospital where, after about a week, he also died.

The contest here is between the brothers and sisters of Willa, the appellants, and the heirs of Emmett, the appellees. In determining their respective rights to the assets of Willa's estate, three questions become important. Were Emmett and Willa husband and wife? Was Willa of one half Osage Indian blood? If so, was she within the class whose restricted property could be inherited only by persons of Indian blood?

Emmett and Jennie had been divorced several weeks prior to the time they went to Willa's apartment but if, after the divorce, they cohabited and assumed the marriage relationship with each other and with society at large a bona fide common-law marriage was established. Thomas v. James, 69 Okl. 285, 171 P. 855. It was held, in the case of Dunlap v. Dunlap, 88 Okl. 200, 212 P. 608, that,

"Parties to a divorce action may remarry again within six months after

the divorce is granted and remarriage may be shown by facts from which a common-law marriage may be presumed."

■ The existence of such relationship at the time the ceremony was performed between Emmett and Willa would create a situation the same as that recently before this court in the case of Earley v. State Industrial Commission, Okl., 269 P.2d 977, 979. It was there pointed out that,

"Thus, when Audrey and Walter Earley attempted to be married, Audrey was not capable to so contract because she was the undivorced common-law wife of Gillum. That impediment was never removed and she was not the legal wife nor heir of the deceased at the time of his death."

The testimony of Romanita is uncontradicted and indeed is the only evidence in the record bearing on the relationship of Emmett and Jennie. Her testimony is, therefore, conclusive that Emmett and Jennie were living together in their expensive home; that they invited guests into it for an evening of association and that they displayed the home to them in an atmosphere of mutual pride; that Emmett introduced Jennie as his wife and together they assumed the role of host and hostess for dinner and the evening of visitation.

If this testimony could have been refuted, the appellees here were in a very advantageous position to do so. All of the appellants were residents of Osage County, Oklahoma, unacquainted with Houston, Texas, and the Burtons were total strangers to all of them except for Romanita who had had only a brief contact with Emmett and Jennie. On the other hand, the appellees were residents of Houston, with widespread business interests there. They certainly were in possession of all facts surrounding Emmett and Jennie. Yet, no one of them appeared to deny the facts as related by Romanita.

■ Appellees argue the well-established rule of law that "Where a marriage has been consummated in accordance with the forms of the law, the law indulges a strong presumption in favor of its validity." Hale v. Hale, 40 Okl. 101, 135 P. 1143, 1144. However, as a corollary to that rule, it is equally well established in this jurisdiction that,

"The presumption arising in favor of the validity of a second marriage is not a conclusive presumption, but is what is a rebuttable presumption, and the one contending against the legality of the second marriage is not required to make plenary proof of a negative averment. It is enough that he introduce such evidence as, in the absence of all counter-testimony, will afford reasonable grounds for presuming that the allegation is true, and when it is done the onus probandi will be thrown on his adversary." Brokeshoulder v. Brokeshoulder, 84 Okl. 249, 204 P. 284, 34 A.L.R. 441.

■ The uncontradicted testimony of Romanita having established the common-law relationship of husband and wife between Emmett and Jennie, the parties were not at liberty to rely upon presumptions contra thereto. Sam v. Sam, 172 Okl. 342, 45 P.2d 462. This then brings us to the same conclusion as that reached in the case of Earley v. State Industrial Commission, supra. Since Emmett was the common-law husband of Jennie at the time of his purported marriage to Willa, he was incapable of so contracting and therefore was not the husband nor heir of Willa at the time of her death.

■ The conclusions here reached are founded upon the law of this State. If it varies from the law of Texas or Louisiana, the same constituted questions of fact upon which no proof was presented.

"The law of a sister state when it constitutes a material issue in pending litigation is a question of fact and must be established as such in order to be entitled to consideration." Kennedy v. Chadwell, 193 Okl. 304, 142 P.2d, 979, 981.

Having reached this conclusion, it is unnecessary to discuss other propositions presented in which there is apparent merit, to wit: That six months had not elapsed since the divorce of Emmett from Jennie and, therefore, his attempted marriage to another was void; that Willa was of one half Osage Indian blood and therefore her property could not have been inherited by Emmett who was not of Indian blood.

The judgment is reversed and the cause remanded with directions to render judgment not inconsistent with the views herein expressed.

JOHNSON, V. C. J., and CORN, ARNOLD, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.

WELCH, J., dissents.