In the Matter of the ESTATE OF Jack Marvin ALLEN, Sr.

Larry ALLEN, Appellant,

v.

Wilda Jean ALLEN, Appellee.

No. 64600.

Supreme Court of Oklahoma.

June 2, 1987.

Crowley, Butler, Pickens & Martin by David C. Butler, Enid, for appellant.

Shirley, Stephenson, Shirley & Webber by Douglas Shirley, Watonga, for appellee.

HODGES, Justice.

This appeal arises from a decision declaring appellee to be the surviving spouse of the decedent and thereby entitled to participate in the estate of the decedent. The deceased, Jack Marvin Allen, Sr., married Wilda Jean (Sutton) Allen (appellee) in January of 1965. Three years later, the couple divorced. On September 28, 1969, Jack Allen and appellee remarried. A petition for divorce was filed in June of 1971, but the petition was later dismissed and no decree was entered. The parties, however, remained permanently separated.

In June of 1977, appellee entered into a cohabiting relationship with Garland Gould which resulted in the birth of four children. Garland Gould filed a petition for divorce in Blaine County and sought custody of the children. Appellee answered the petition as Wilda Jean Gould, admitted the existence of the common law marriage and requested the custody of the children. The Blaine County District Court found a common law marriage existed and entered a decree of divorce.

On September 13, 1979, Jack Allen married Flossie Drake. The marriage produced no children and ended in 1983 with the suicide death of Flossie Drake. Approximately a year later, Jack Allen died testate leaving the entire estate to Larry Allen (appellant), his surviving son from a prior marriage. Appellant son was named executor in decedent's will. Subsequently, appellee petitioned for letters of administration and appointment as personal representative of the estate as the surviving spouse of decedent. Appellant also petitioned the court to issue letters testamentary to him.

The trial court found the marriage between Jack and Wilda Allen had not been dissolved by a valid divorce or legal separation, and, therefore, Wilda is the surviving spouse of Jack Allen and entitled to her statutory share under his estate. The Court of Appeals affirmed holding:

"The cohabitation between appellee and Mr. Gould could not generate a common law marriage if she were not divorced from Decedent. The law in Oklahoma does not recognize such a thing as a common divorce."

The particular facts of this case warrant a refusal of appellee's statutory share in the decedent's estate based on the doctrine of estoppel. Estoppel is a bar raised by the law which precludes one from alleging or from denying a certain fact or state of facts in consequence of the previous allegation, denial, conduct, or admission or in consequence of a final adjudication of the matter by a court of law. *Wisel v. Terhune*, 201 Okl. 231, 204 P.2d 286, 290 (1949). In this case, appellee claims to be the surviving spouse of Jack Allen because no divorce was ever decreed. However, her conduct precludes the assertion of her status as decedent's wife and her right to his estate. Approximately six years after her separation from decedent, she voluntarily entered into cohabitation with Garland Gould. She never asserted the existence of her prior marriage. However, she continued the relationship with Gould which resulted in the birth of four children. When Gould filed for divorce, appellee admitted the existence of their common law marriage. The Blaine County District Court found the existence of such a marriage and entered a decree of divorce. The decree was issued in 1983. After hearing of the decedent's death in 1984, she immediately claimed her marital status to the decedent even though she had remained silent for approximately thirteen years.

In this regard we find our recent decision in *Tatum v. Tatum*, 53 OBJ 1197, May 15, 1982, *reh'g denied* May 27, 1987, 736 P.2d 506 (Okla.1987), to be instructive. In that case the first wife claimed to occupy the status of the surviving spouse under the workers' compensation law although she was living alone at the time of her husband's death by reason of desertion. This Court rejected the contention raised by the second wife of a subsequent common law marriage that the first wife lost her status as a deserted spouse by inaction and non-pursuit. We affirmed the trial court's finding that the first wife was the decedent's deserted spousal survivor entitled by statute to benefits. We did, however, state

affirmative acts may indicate a change in character of the marriage relationship and that such legal change could manifest itself through some outward recognition that the relationship had terminated. We noted affirmative acts which might be recognized as changing the legal status such as suing for divorce or separate maintenance, active resistance to reconciliation efforts or cohabitation with another. Such indicia were found absent in that case.

The predicate facts in this case constitute affirmative acts which give rise to a legal change in appellee's marital relationship with decedent. In particular, appellee's cohabitation with Gould and her affirmative recognition of her subsequent common law marriage to Gould. We therefore find appellee's prior assertion of legal status and judicial finding and decree from which there was no appeal operates as a bar to her later inconsistent claim. *Hill v. Shreve*, 448 P.2d 848 (Okla.1968); *Marcum v. Zaring*, 406 P.2d 970 (Okla.1965); *Norton v. Coffield*, 357 P.2d 434 (Okla.1960).

In *Darrough v. Davis*, 135 Okl. 263, 275 P. 309 (1929), this Court held the plaintiff was estopped from asserting his status as decedent's surviving spouse which would have allowed him to participate in the estate. The plaintiff had abandoned his wife without obtaining a divorce, and subsequently entered into another marriage. Of this marriage two children were born and were being raised by the plaintiff and his wife. After his former wife died, plaintiff immediately announced he had never received a divorce from his former wife, and as her surviving spouse, he was entitled to participate in her estate. This Court found the fact that he remained silent for a long period of time, even during his present marriage, estopped him from claiming an interest in the estate. This Court described the theory of estoppel as, "If you do not speak when you ought to speak, you shall not speak when you want to speak."

Given the facts in this case, appellee is estopped from asserting her continual marital status with the decedent. Appellee had the opportunity for thirteen years to assert her relationship with the decedent, but de-clined to do so until the decedent's death. She cannot "speak" now after she has been silent for so long.

■ Estoppel is a doctrine that may be used to prevent injustice. *Cf. Cleveland Trust v. State, Hunt*, 555 P.2d 594, 596 (Okla.1976). If this Court decided to allow appellee to participate in the decedent's estate, this would prejudice those who are rightly entitled to share in the estate. Because of her previous conduct, appellee should have no right to share in the estate.

In conclusion, we find the Court of Appeals erred in affirming the trial court's decision. This Court in *Darrough, supra*, said before the plaintiff could claim an interest in the estate, it was essential for him to establish the lack of a divorce and the voidness and illegality of his second marriage. However, this Court found this would produce a condition that has support neither in equity, good morals, settled law or public policy. Therefore, based on the doctrine of estoppel and considerations of public policy, appellee is estopped from asserting her status as surviving spouse.

We accordingly VACATE the order of the Court of Appeals, REVERSE the judgment of the trial court and the cause is REMANDED for further proceedings consistent with this opinion.

LAVENDER, SIMMS, OPALA, WILSON and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., concurs in result.

DOOLIN, C.J., and KAUGER, J., dissent.

OPALA, Justice, with whom LAVENDER, Justice, joins, concurring.

This case clearly does not require that we determine whether Wilda's marriage to Jack was valid at its inception nor whether, in contemplation of law, the bond of their matrimony remained efficacious at the time of Jack's death. Rather, the *dispositive question* to be answered here is far more narrow. It calls for us to decide *whether Wilda's claim as Jack's widow stands*

*barred by estoppel*,[1] either by record or *in pais*, that arises from her subsequent marriage to and divorce from Garland Gould.

A personal status, though valid in law, may nonetheless fail to support a claim for the exercise of its rights if the assertion of the status be found to contravene some overriding principle of public policy or jurisprudence.[2] A slayer who took the decedent's life in a "felonious, intentional and unjustified manner"—to give but one example of this principle's application—will not be allowed to share in the decedent's estate either as an heir or legatee even in the absence of an explicit statute that bars the slayer's bounty.[3]

I hence concur in the court's view and in its judgment that Wilda is *estopped* to claim her *personal status* as Jack's heiress.

SIMMS, Justice, concurring:

I concur in the judgment of the Court, but for the reason that there is a strong legal presumption favoring the validity of the "last" marriage—Jack's to Flossie, as well as Wilda's marriage to Garland.

We have often recognized this presumption in instances where conflicting claims of marriage were made. *Marcum v. Zaring*, Okl., 406 P.2d 970 (1965); *Norton v. Coffield*, Okl., 357 P.2d 434 (1960); *Templeton v. Jones*, 127 Okl. 1, 259 P. 543 (1927).

The following is the Court's syllabus in *Norton v. Coffield*, supra:

"1. One of the strongest presumptions of the law, grounded in public policy favoring and presuming morality, marriage and legitimacy, is that a marriage once shown is presumed legal and valid. This presumption increases in strength with the lapse of time, recognition and acknowledgment of the marriage and the birth of children.

"2. In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the last marriage. Accordingly the burden of showing the validity of the first marriage is on the party asserting it, and even where this is established it may be presumed in favor of the last marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the last marriage."

This following explanation of the policy behind the doctrine from *Coachman v. Sims, et al.*, 36 Okl. 536, 129 P. 845, 847 (1913), has been reiterated many times by the Court:

"Under the facts of this case, we are satisfied that, in order to uphold the validity of this marriage, in the absence of an affirmative showing that there had been no lawful separation, the presumption will be that a divorce had been secured. Marriage should not be destroyed on presumption. The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and stability of descent and distribution, and therefore presumes innocence and virtue, in the absence of proof. The wisdom of this presumption is rendered apparent by the facts in this case. This rule is well established by the authorities. * * *"

The law presumes that the marriage of Jack and Wilda ended in divorce. The burden of proof was placed on Wilda to show, by clear and convincing evidence, that no divorce had been granted. See, *Marcum*, supra, and *Hill v. Jones*, 180 Okl. 330, 69

1. *Darrough v. Davis*, 135 Okl. 263, 275 P. 309 [1929]; *Wisel v. Terhune*, 201 Okl. 231, 204 P.2d 286, 290 [1949]; *Norton v. Coffield*, Okl. 357 P.2d 434 [1960]; *Marcum v. Zaring*, Okl., 406 P.2d 970 [1965] and *Hill v. Shreve*, Okl., 448 P.2d 848 [1968]. *Cf. Siler v. Siler*, Okl., 350 P.2d 510, 512–513 [1960]. See also *Horn v. Cole*, 51 N.H. 287 (1868), 12 Am.Rep. 111 [1871], *a leading case on the origin and scope of the doctrine of estoppel, legal and equitable.*

2. B. Cardozo, *The Nature of the Judicial Process*, p. 40, 41, Yale [1965].

3. *State Mut. Life Assur. Co. of Amer. v. Hampton*, Okl., 696 P.2d 1027, 1035 [1985] (Opala, J. concurring).

P.2d 324 (1937). As the Court stated in its syllabus in *Hill v. Jones*, supra:

"The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it that such requirement is enforced, even though it involves the proving of a negative. The burden of proof is on the party attacking the legality of a marriage which appears proper in form, and requires him through out and in every particular plainly to make the fact appear, against the constant pressure of the presumption of validity, that it is illegal and void."

The evidence shows that Wilda failed to establish that fact, and I would reverse the trial court on that ground.

KAUGER, Justice, with whom DOOLIN, Chief Justice joins, dissenting by reason of *stare decisis:*

Because the majority opinion fails to overrule or distinguish the controlling Oklahoma cases: *Cox v. Cox*, 95 Okl. 14, 217 P. 493, 34 A.L.R. 432 (1923); *Brokeshoulder v. Brokeshoulder*, 84 Okl. 249, 204 P. 284, 34 A.L.R. 441 (1921); and *Copeland v. Copeland*, 73 Okla. 252, 175 P. 764 (1918),[1] I must dissent. Nor can I join the concurring opinion by Justice Simms because it presumes, in the *presence* of clear and convincing evidence to the contrary, that "the marriage of Jack and Wilda ended in divorce."

Apparently, a discussion of *Cox, Brokeshoulder*, and *Copeland* is in order. Gilbert and Catherine Cox were married on July 11, 1918. Two months later, the couple separated, and on May 28, 1920, Catherine married Kelsie. An examination of the court records in the counties in which Gilbert and Catherine had lived reflected that although Catherine had filed for divorce, the proceedings had been dismissed without a divorce ever having been granted.

After Gilbert died, Catherine sought to assert that she was an heir at law of Gilbert's estate. This Court recognized that Catherine had deserted Gilbert, and that she had entered into a second marriage. However, the Court decided that she was not estopped from asserting and receiving her spousal interest in Gilbert's estate.

Cammack and Josephine Brokeshoulder were married on September 29, 1908, in Mississippi. Sometime in November, 1912, Cammack left his wife and child there and moved to Oklahoma. Less than two years later, on July 18, 1914, Cammack married Ruby. Three years later on November 13, 1915, Josephine married Edgar. When Cammack died in March of 1920, Josephine claimed that as his wife she was entitled to recover her share of the estate. She submitted evidence which revealed that she and Cammack had not obtained a divorce in any county in which they had resided since their marriage in 1912. Under those facts, this Court found that Josephine was Cammack's surviving spouse.

Joe and Samantha Copeland were married on May 13, 1877. In 1879, Joe deserted her, and in 1881, Samantha remarried. In 1899, Joe married for the second time. Again, the evidence produced indicated that no divorce had been granted in any of the counties in which they had resided, either individually or as a couple. This Court found that because Samantha was living at the time Joe consummated his second marriage, and because no divorce had been granted, his second marriage was void. Therefore, it determined that Samantha was his legal wife and that she was entitled to share in his estate.

After any legal impediments to a marriage are removed, partners who live together with the intent of contracting to become husband and wife may have their relationship ripen into a valid common law marriage. However, if the impediments

---

1. Also see *Tatum v. Tatum*, 53 O.B.J. 1197 (May 11, 1982), 736 P.2d 506 (1982), in which workers' compensation death benefits were awarded to the first wife from whom the claimant had never been divorced. The deceased claimant deserted his first wife and cohabited with another woman, who claimed to be his common law wife, and thus the one entitled to receive death benefits. Again, the impediment of a valid pre-existing marriage precluding a valid second marriage was never removed. We note, however, that in *Tatum*, no divorce proceedings were instituted, nor was there an inconsistent legal claim asserted.

remain in full force and effect, the marriage remains a nullity—it cannot ripen into anything.[2] In support of her position that she and Jack had never been divorced, Wilda obtained affidavits, (just as had the Cox, Brokeshoulder, and Copeland "widows"), from the court clerks in the ten counties in which either she or Jack had resided: Dewey, Ponotoc, Blaine, Kiowa, and Pittsburg Counties in Oklahoma; Los Angeles County, California; Sierra and Washoe Counties in Nevada; and Dallam and Hartley Counties in Texas. Her evidence was unrefuted.[3] Do the facts here warrant a different result than those in *Cox, Brokeshoulder,* and *Copeland?* I think not.

Marriage is the personal relationship which arises out of a civil contract. It requires the consent of parties who must be *legally competent* to contract.[4] Although I am in sympathy with the equities in this case, and while I may find the application of the doctrine of estoppel attractive, I am bound by the doctrine of *stare decisis.* I am compelled to find that Jack and Wilda Allen were incompetent to contract subsequent marriages because they had never been divorced. As a general rule, justice is more certainly served by deciding cases on the evidence if it is available, than by indulging presumptions.[5] Under the teaching of *Cox, Brokeshoulder,* and *Copeland,* Wilda Allen overcame the rebuttable presumption that her first marriage terminated in divorce, she is the surviving spouse of Jack Allen.

---

**2.** *Olinghouse v. Olinghouse,* 265 P.2d 711, 713 (Okla.1954).

**3.** The presumption arising in favor of the validity of a second marriage is not a conclusive presumption, rather it is a rebuttable one. The person asserting the illegality of the second marriage is not required to make plenary proof of a negative averment. *Harrison v. Burton,* 303 P.2d 962, 964 (Okla.1956).

**4.** Title 43 O.S.1981 § 1 defines marriage:

"Marriage is a personal relationship arising out of a civil contract to which the consent of parties legally competent of contracting and of entering into it is necessary, and the marriage relationship shall only be entered into, maintained or abrogated as provided by law."

**5.** *Goldfeder v. Johnson,* 392 P.2d 351, 356 (Okla. 1964).