### In re ESTATE OF DALTON.█

Court of Common Pleas of Ohio,
Columbiana County,
Probate/Juvenile Division.

No. 93 EST 0357 111/269.

Decided Jan. 27, 1995.

*David A. LaRue; Levinson, Fisher & Brown* and *David J. Scarpone,* for Helen Dalton.

*Fitch, Kendall, Cecil, Kendall & Robinson* and *Ian Robinson,* for Melvina Taylor.

*Timothy Brookes, pro se.*

---

C. ASHLEY PIKE, Judge.

## I. *STATEMENT OF FACTS*

Cledis Dalton expired on the Ides of March in the year 1992. Interestingly, two women now claim to be his lone surviving widow. The first to make the

claim in this court was one Melvina Taylor, who filed herein an application for authority to administer Dalton's estate on December 3, 1993. Her application indicated that the decedent died intestate. Letters of authority were issued to her as administrator on the basis of her claim as being the surviving spouse.

Next to come forward making the claim that she was the surviving spouse of Cledis Dalton was one Helen Dalton, who filed an application to probate a document purporting to be the decedent's will dated April 18, 1979. The application to probate was filed on February 22, 1994.

In the interest of judicial economy and to further the administration of the estate, the court convened a status conference on March 16, 1994, with counsel for both "spouses." On that date, there was filed a motion on behalf of Helen Dalton for an order removing Melvina Taylor as administrator of the decedent's estate and appointing her in accordance with the decedent's purported will.

After several justifiable continuances, this matter was called for a hearing on the merits of the motion for removal on Friday, October 21, 1994. The parties were granted until 4:00 p.m. on Friday, November 18, 1994, to file memorandums herein. Upon the filing of the same, the matter was taken under advisement. The case now comes on for decision.

The current fiduciary, Melvina Taylor, claims that she and the decedent established a common-law marriage in September 1959 and, moreover, that this purported marriage continued in existence through the decedent's death, some thirty-three years later.

It is the claim of Melvina Taylor that two children were born as issue of this common-law marriage—Cledis Dalton, born March 13, 1961, and Tod Alan Dalton, born March 4, 1963. On the birth certificates for both children, the parents appear to be Melvina and Cledis Dalton. It is the claim of Melvina Taylor that she and Cledis fulfilled all the elements necessary for the establishment of a common-law marriage and that the two had actually intended to have a marriage ceremony performed in Maryland but, because of a family medical emergency, they were required to return home prior to the execution of any ceremony.

By June 1963, after the birth of the couple's second son, the decedent left his wife for the second time, and she filed divorce proceedings in Ohio. However, she was unable to locate the defendant and have him served with the necessary documents. Melvina Taylor, then Melvina Dalton, discontinued the divorce action less than three months later. The evidence does not disclose any further divorce proceedings ever having been instituted by either party prior to the decedent's death. Nevertheless, both Melvina Taylor and the decedent "remarried," follow-

ing what turned out to be the permanent separation which began in the summer of 1963.

As for Taylor, she remarried twice. Her first marriage to a Mr. Mason in 1968 was brief and soon ended in divorce. The following year, on February 8, 1969, she married Harvey Russell Taylor, whose name she continues to carry today. Just how that marriage ended, or if it did end, is not disclosed by the record.

In spite of her two marriages subsequent to the permanent separation from the decedent, Melvina Taylor, the current administrator, claims that she is the surviving spouse of Cledis Dalton.

Further, she, in an effort to account for the validity of her marriages to Mason and Taylor without having obtained a divorce from the decedent, indicates that she saw the decedent briefly one day after she and the decedent had been separated for a substantial period. She accepted his word on that occasion that he had obtained a divorce from her. Admittedly, she did not inquire and therefore never received verification of any such proceedings.

Meanwhile, the decedent, Cledis Dalton himself, married Helen Nieb in a Virginia ceremony in 1979. Prior to this ceremonial marriage, the couple had cohabited with one another and had given birth to a son in February 1969. It is this Helen Dalton who excepts to the status of Melvina Taylor as Cledis Dalton's surviving spouse and to the appointment of Melvina Taylor as the fiduciary herein.

As previously stated, Dalton presented with her application a purported will dated April 18, 1979, naming her as fiduciary and surviving spouse. It was Helen Dalton's testimony that her marriage to Cledis Dalton was still in effect at the time of his demise.

Early in the administration of this estate and subsequent to her appointment as fiduciary, Melvina Taylor filed on March 16, 1994 a claim as a creditor, indicating that she is due child support from the decedent under the URESA in the case of *Melvina Dalton v. Cledis Dalton,* Jefferson County Court of Common Pleas, case No. A2746. Evidence indicated that the action was eventually dismissed, when Cledis could once again not be located.

The evidence is clear that the decedent died with at least five adult sons surviving him, at least two of whom carried the decedent's first name of Cledis.

In summary, this court is faced with ruling on the standing of Melvina Taylor to serve as the fiduciary either as the decedent's surviving spouse or as a creditor against his estate. Further, depending on that ruling, the court may have to determine Helen Dalton's fitness to serve in that capacity.

## II. *DISCUSSION OF ISSUES*

A review of Ohio law reveals no Ohio case in this area. However, several cases from other jurisdictions stand for the proposition that a subsequent remarriage by a person in the position of Melvina Taylor constitutes a repudiation of the prior alleged marital relationship, thus extinguishing her status as a surviving spouse.

In *In re Estate of Williams* (1987), 164 Mich.App. 601, 417 N.W.2d 556, the Michigan Court of Appeals applied estoppel principles in holding that the decedent's second wife was precluded from establishing her status as surviving spouse in view of her conduct after deserting the decedent. A reading of the facts reveals that the second wife, once deserting the decedent, remarried without obtaining a divorce and without ascertaining to a reasonable degree of certainty whether the decedent had in the alternative divorced her. The second wife later learned of the decedent's marriage to his fourth wife, yet remained silent until his death. In affirming the probate court's ruling that the fourth wife constituted the decedent's surviving spouse at the time of his death, this Michigan appellate decision premises its holding on equitable grounds. Accordingly, the second wife's "apparent object" of her claim, "the bounty produced" as a result of the decedent's marriage to his fourth wife, constituted an inequitable factor motivating her desire to be declared the decedent's surviving spouse. *Id.* at 604–605, 417 N.W.2d at 559–560.

The Florida District Court of Appeals similarly applied estoppel principles in *In re Estate of Butler* (Fla.Dist.Ct.App.1984), 444 So.2d 477, rehearing denied (Fla.1984), 451 So.2d 847. Faced with a first wife's claim that she was the decedent's surviving spouse, this tribunal held that her actions following their separation precluded a decision justifying such a claim. In this case, the first wife remarried without obtaining a divorce and without being served with notice of any divorce proceeding the decedent may have instituted against her. In her defense, the first wife put credence in the decedent's allegation that he had nevertheless "bought" a divorce. 444 So.2d at 478. Having taken advantage of the "divorce" the decedent alleged he had bought, the first wife was declared ineligible from claiming "the benefits of a marriage which she herself" had disclaimed. *Id.* at 479.

In making this ruling, the Florida District Court of Appeals affirmed the decision of the trial court to award the decedent's second wife survivorship rights in his estate. *Id.;* accord *In re Estate of Allen* (Okla.1987), 738 P.2d 142, 144 (per Oklahoma's law of estoppel, decedent's first wife held to be precluded from establishing status as his surviving spouse given her subsequent common-law marriage to third-party).

Absent an Ohio decision holding that a spouse's conduct precludes such party from establishing his or her status as surviving spouse, this court yields to the aforementioned decisions of Michigan, Florida, and Oklahoma, each having reached this more narrow holding.

These holdings comport with the estoppel principle under Ohio law that a party may be estopped by his or her remarriage to take a legal position inconsistent with the validity of that marriage. *Anderson v. Anderson* (1984), 13 Ohio App.3d 194, 13 OBR 242, 468 N.E.2d 784. The similarity of the fact patterns in the cited out-of-state cases, together with the estoppel principle espoused in *Anderson,* compel this court to find that Melvina Taylor is estopped from asserting any claim to the status of surviving spouse of the decedent.

Further, this court looks with a jaundiced eye on Melvina Taylor's claim for overdue child support for two reasons. First, the claim arose three decades prior to the filing of the application to administer this estate by Melvina Taylor and the same may be subject to attack on procedural and jurisdictional grounds. In any event, it is a familiar maxim of Ohio law that probate courts have broad discretion in the appointment of fiduciaries. *In re Estate of Henne* (1981), 66 Ohio St.2d 232, 20 O.O.3d 228, 421 N.E.2d 506. The court is satisfied that the claim of Melvina Taylor can be adequately reviewed, and her rights to any estate assets to satisfy her purported claim can be fairly decided by someone other than Melvina Taylor in her role as a creditor-fiduciary.

## III. *DECISION*

In summary, the court finds that Melvina Taylor is estopped to claim any status as a surviving spouse, and her remaining claim as a creditor is of doubtful validity. The court finds by a preponderance of the evidence that Melvina Taylor should be, and she is hereby, removed as fiduciary.

The next logical determination for this court to attempt is to decide whether or not Helen Dalton, the exceptor to the appointment of Melvina Taylor as fiduciary, is herself the surviving spouse of Cledis Dalton and is otherwise a fit person to serve in the capacity as fiduciary.

The evidence in this case revealed that Helen Dalton, without letters of appointment, negotiated some checks made payable to the estate and has at least given tacit permission to other members of her family to take certain guns and other items of personal property belonging to the decedent. This was accomplished without the grant of letters of authority from this court and obviously prior to the resolution of the current matter before the court. Further, the evidence is clear that Helen Dalton suffers certain physical health problems, including restricted mobility.

■ Therefore, exercising its discretionary authority in such matters, the court finds that Helen Dalton is not a suitable person, even if she is the surviving spouse of Cledis Dalton, to serve as fiduciary of this estate. Further, the court is satisfied from the unique nature of this proceeding that it would be in the best interests of all concerned for a neutral third party with a knowledge of the law in this area to be appointed as fiduciary. The court finds Attorney Timothy R. Brookes of East Liverpool, Ohio, an attorney licensed to practice law in this state, to be such a person, and hereby appoints him administrator de bonis non with the will annexed to undertake the further administration of this estate.

Brookes is ordered to file an inventory herein not later than forty-five days and to promptly assess the need for such other filings, such as a concealment of assets complaint, as may be proper and necessary under the circumstances. A surety bond in connection with his appointment is hereby set in the amount of $20,000, subject to review, upon the filing of the inventory.

*So ordered.*