**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARJORIE R. SMITH, Widow of
Harry A. Smith,

        Plaintiff - Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant - Appellee.

No. 02-3110
(D.C. No. 00-CV-2466-DJW)
(D. Kansas)

**ORDER AND JUDGMENT** *

Before **KELLY** , **McKAY** , and **O'BRIEN** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Marjorie Smith challenges the decision of the Commissioner denying her benefits as a widow or surviving divorced spouse. We reverse and direct the award of benefits.

**Background**

Marjorie Smith was married to Harry Smith in Kansas on September 28, 1957. They had four children, born on September 15, 1958, June 19, 1962, April 13, 1966, and January 12, 1971, respectively. Harry was a wanderer and spent extended periods of time away from home. Harry and Marjorie last lived together in April of 1970, when their last child was conceived. This last child was listed on her birth certificate as Harry's legitimate child. Although Harry and Marjorie separated, Marjorie was never aware of any efforts by Harry to divorce her.

Nonetheless, during a prior period of separation, Harry purported to marry Earlene Pratt on November 11, 1966. Harry and Earlene were then divorced on October 19, 1969. They had no children together. After this divorce, Harry returned for a period of time to Marjorie, when they conceived their last child together.

Following Harry and Marjorie's separation in April of 1970, Harry married Elva Calbraith on March 27, 1971. They had a child together. Harry remained married to Elva until his death on June 10, 1977, in Oklahoma.

Upon Harry's death, both Marjorie and Elva applied for benefits for their children. Only Harry's legitimate children were eligible for benefits. Because Harry resided in Oklahoma at the time of his death, the Social Security Administration (SSA) applied Oklahoma law to determine the relationship of the parties. Oklahoma law presumes the validity of the latest in a series of marriages, such that earlier marriages are presumed to have ended in divorce absent evidence to the contrary. *See Norton v. Coffield*, 357 P.2d 434, 437 (Okla. 1960). In this proceeding, there was no evidence Marjorie and Harry had divorced, but because of his itinerant lifestyle, neither was there conclusive evidence that he had not obtained a divorce in one of the many counties where he had resided. Accordingly, the SSA presumed that Marjorie's marriage had ended in divorce prior to Harry's second marriage on November 11, 1966. This meant that all of Marjorie's minor children except her last child were eligible for benefits. Elva was determined to be Harry's legal widow, and her child was determined to be eligible for benefits. Marjorie did not appeal this ruling.

In 1996, the SSA informed Marjorie that she was eligible for widow's benefits. The SSA later realized it had made an error and revoked the benefits, and Marjorie sought a hearing to determine whether she should be eligible for either widow's benefits or surviving divorced spouse benefits. To be eligible for benefits as a surviving divorced spouse, Marjorie would need to show that she

-3-

had been married to Harry for at least ten years.    *See* 42 U.S.C. § 416(d)(2).  The Administrative Law Judge (ALJ) denied the request for a hearing on grounds of res judicata, reasoning that the 1978 SSA decision precluded a finding that Marjorie was Harry's legal widow, as well as a finding that their marriage had lasted ten years.

The Appeals Council determined that res judicata did not prevent adjudication of whether Marjorie was a surviving divorced spouse, as this issue had not been explicitly addressed in the 1978 SSA decision.  The 1978 decision did not directly weigh the equities of Harry's (first) marriage to Marjorie against Harry's (second) marriage to Earlene.  Rather, the comparison there was with Harry's (third) marriage to Elva, which lasted through his death and produced a child.  The Appeals Council determined that it would not be inconsistent with this earlier adjudication to weigh the presumption differently when comparing Harry's first and second marriages versus comparing his first and third marriages.

The Appeals Council ordered the ALJ to hold a hearing on the matter, and specifically directed the ALJ to (1) determine the length of Marjorie's marriage to Harry and (2) search the records of a number of counties where Harry was known to have lived to determine if there was any record of divorce.

On remand, the ALJ found no record of a divorce in any of the counties where Harry was known to have resided.  However, the ALJ determined that it

was impossible to know with certainty all the counties in which Harry lived and to search for a divorce record in those counties. While there was some equivocation in the ALJ's analysis, in the body of the decision the ALJ predicted that the Oklahoma courts would have presumed the validity of the second marriage and accordingly presumed that Harry's marriage to Marjorie ended prior to November 11, 1966, citing *Marcum v. Zaring*, 406 P.2d 970 (Okla. 1965). The Appeals Council then adopted this conclusion.

**Analysis**

We review the ALJ's decision to determine if the factual findings are supported by substantial evidence and if the correct legal standards were applied. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). We need not defer to an ALJ's interpretation of state law. *Smereczynski v. Sec'y of Health & Human Servs.*, 944 F.2d 296, 299 (6th Cir. 1991). When an ALJ declines review based on res judicata principles, this court lacks jurisdiction to review that decision. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Here, however, while the ALJ initially cited administrative res judicata, the Appeals Council directed the ALJ to consider new evidence, thus effectively reopening the matter. *Taylor ex rel. Peck v. Heckler*, 738 F.2d 1112, 1114-15 (10th Cir. 1984). Accordingly, we are free to review the ALJ's decision on the merits. *Id.*

We conclude that while *Marcum v. Zaring* does share some similarities with the instant case, the differences are more significant, especially in light of the policy rationale behind Oklahoma's presumption. When viewed in the context of other case law applying the presumption, we conclude that Oklahoma courts would have found Marjorie and Harry to have been married at least through April of 1970. Therefore, Marjorie should have been found eligible for benefits as a surviving divorced spouse.

Both *Marcum* and the earlier case of *Norton v. Coffield* applied the presumption to conclude that an earlier marriage was ended by divorce, thus permitting a valid second marriage. However, in both cases the court emphasized (1) the length of the marriage, and (2) whether there were children born into the marriage as determinative factors. *See Norton*, 357 P.2d at 438 ("[T]he passage of time and recognition and acknowledgment of the validity of the marriage under attack strengthens the presumption that said marriage is valid, and when the legitimacy of children of said marriages is at stake the presumption is further strengthened."); *Marcum*, 406 P.2d at 973 (presumption of validity of second marriage increases with passage of time and the birth of children).

In those cases, the latter marriage carried greater weight with respect to these factors. *See Norton*, 357 P.2d 436 (finding last marriage valid where it lasted thirty-three years and resulted in three children, as opposed to earlier

marriage which lasted under two years and resulted in one child); *Marcum*, 406 P.2d at 971, 972-73 (finding second marriage valid where it lasted ten years and resulted in four children, as opposed to first marriage which produced no children).

By contrast, in *Puntka v. Puntka*, 50 P.2d 1092 (Okla. 1935), a husband successfully argued that he had never been married to his common-law wife because she had never ended her prior, ceremonial marriage. *Id.* at 1092-93. There had been a child in the prior marriage. *Id.* The second husband's presentation of competent evidence that there had been no divorce in that first marriage was sufficient to defeat the presumption of validity with respect to the second marriage. *Id.* at 1093.

In *Harrison v. Burton*, 303 P.2d 962 (Okla. 1954), the husband and wife had been divorced but then reunited, and they held themselves out as husband and wife. *Id.* at 963. The husband then married another woman in a ceremony approximately five days before a fatal car accident in which both the husband and his second wife were killed. *Id.* Inheritance issues required determination of the validity of the second marriage. In concluding that the existence of the first marriage precluded a valid second marriage, the court emphasized that the presumption in favor of the validity of a second marriage is rebuttable, and that the party opposing the validity of the second marriage "is not required to make

plenary proof of a negative averment." *Id.* at 964 (quotation marks and citation omitted).

In *Harrison* , the testimony establishing the common-law marriage of husband and wife (following their reunion) was uncontradicted, therefore the court concluded that the parties alleging the validity of the second marriage were not entitled to rely on the presumption. *Id.*

Similarly, in the instant case, the factors of duration (at a minimum nine years as opposed to three) and children (four children as opposed to zero) weigh heavily in Marjorie's favor. Further, there was no testimony or evidence contradicting Marjorie's assertion that there had never been a divorce.

It is also worth noting that Oklahoma courts have been somewhat inconsistent in assessing the burden of proof against the party attacking the marriage. *Compare Puntka* , 50 P.2d at 1093 (some, competent evidence sufficient to eliminate the presumption), *with Norton* , 357 P.2d at 439 (evidence must be "clear, strong, and unequivocal"). The consistent rationale underlying these different applications, however, is that the presumption is rebuttable, and the strength of the rebuttal evidence must mirror the apparent strength of the validity of the marriage. *See Norton* , 357 P.2d at 439 ("[W]hether the person attacking a marriage has introduced sufficient evidence to overcome the presumption of validity of the marriage depends upon the length of time that the attacked

marriage has continued, whether a successful attack will in effect bring about an adjudication that children of the marriage under attack are illegitimate, and other facts."). Here, the evidence of the validity of Harry's second marriage is not so overwhelming (in that it lasted only three years and produced no children) that Marjorie should be required to meet it with overwhelming rebuttal evidence.

As expressed in the above decisions, one of the central policy rationales for Oklahoma's presumption in favor of the validity of marriages is to promote a finding that children of a union are legitimate. Application of that rationale in this case supports the conclusion that Harry and Marjorie were married at least through the conception of their last child in April of 1970.

Accordingly, the judgment of the United States District Court for the District of Kansas is REVERSED, and the district court shall enter an order granting surviving divorced spouse benefits to Marjorie Smith.

Entered for the Court

Monroe G. McKay
Circuit Judge